**J. R. SKILLERN, INC. et al., Appellants,**

v.

**William G. leVISON, Appellee.**

**No. 5356.**

Court of Civil Appeals of Texas, Eastland.

Nov. 29, 1979.

Rehearing Denied Jan. 3, 1980.

Thomas C. Unis, Duncan L. Clore and James K. Peden, III, Strasburger & Price, Lee E. Holt, City Atty., Carroll R. Graham and Linda R. Lawson, Asst. City Attys., Dallas, for appellants.

Edward D. Vassallo, Jr., McKool & Vassallo, Dallas, for appellee.

RALEIGH BROWN, Justice.

This is a condemnation proceeding in which the primary issue is whether lessee, W. G. leVison, is entitled to recover damages for loss of his leasehold estate, and if so, the amount of such damages. Before trial, the owner, Skillern, and the City of Dallas stipulated that the value of the condemned property was $320,000.00. The City then withdrew from the actual trial. In response to a single special issue, the jury found that the value of leVison's leasehold was $83,900.00. The court entered judgment that the owner and lessees of the condemned property collectively recover $320,000.00 from the City. The court further adjudged $81,900.00 against the City as leVison's damages. This amount represents the value of the leasehold less $2,000.00 awarded by the Commissioners and withdrawn from funds placed in the registry of the Court. The City of Dallas was given judgment against Skillern for $81,900.00. Skillern and the City of Dallas appeal. We reverse and render.

The City of Dallas sought to acquire fee simple title to land owned by J. R. Skillern, Inc., Betty Edwards Skillern Baird, and husband R. W. Baird, Nancy Skillern Korn and husband, A. F. Korn. Located on the

land was a building containing several business locations including one leased to leVison in which he operated a restaurant known as Cafe le Cabotin. The leVison lease had a term of three years commencing December 1, 1975, and contained a renewal option for an additional three year period.

The lease contained the following provision with regard to condemnation:

15th. If the whole or any substantial part of the demised premises should be taken for any public or quasi-public use under any governmental law, ordinance or regulation, or by right of eminent domain, or should be sold to the condemning authority under threat of condemnation, this Lease shall, at the option of the Landlord, terminate and the rent shall be abated during the unexpired portion of this Lease effective when the physical taking of said premises shall occur.

After notice and hearing, the Special Commissioners in Condemnation filed the Commissioners' report and award on February 8, 1978. A total award of $320,000.00 was made for the property, with a part of the award being apportioned among three of the tenants, leVison being apportioned $2,000.00. Three tenants and the City of Dallas filed objections to the decision of the Commissioners.

The City of Dallas deposited the sum of $320,000.00 in the registry of the court on April 26, 1978, thus establishing the date of taking of the property.

Skillern's attorneys, on May 2, 1978, by certified mail, return receipt requested, forwarded to leVison at his place of business a letter advising him of the deposit made by the City and the establishment of the date of taking. The letter also advised leVison:

Pursuant to Paragraph 15 of your Lease, Skillern & Majors Properties, hereby confirm their option and terminate your Lease, effective as of the taking on April 26, 1978.

Notice of the letter was delivered to leVison's address on May 4, 1978. Although he remained in business at that location until July 15, 1978, leVison failed to claim the certified letter. The letter was returned to Skillern's attorneys on May 20, 1978, bearing the notation "unclaimed." The letter to leVison and the envelope in which it was delivered was placed in a second envelope and mailed to the attorney who represented leVison in the condemnation proceedings. The letter was received by leVison's attorney on May 29, 1978.

Skillern urges that the court erred in entering judgment for leVison because, as a matter of law, the lease automatically terminated by reason of the condemnation. leVison contends that since there is not an automatic termination clause in the lease and since he was not notified of Skillern's decision to terminate he is entitled to recover damages for loss of his leasehold estate.

■ Under Texas law, parties have a right to contract for termination of a lease in the event of condemnation. The court in *Evans Prescription Pharmacy Inc. v. County of Ector*, 535 S.W.2d 704 (Tex.Civ.App.—El Paso 1976, writ ref'd), held that the lessee was not entitled to recover damages for loss of its leasehold estate through condemnation where the lease provided:

"Should the leased property be taken by right of eminent domain, the lease shall be terminated."

The court in *Fort Worth Concrete Company v. State*, 416 S.W.2d 518 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n.r.e.), said:

A tenant whose lease provides for its termination upon the taking of the leased premises for a public use, is entitled to no compensation when it is condemned. *United States of America v. Petty Motor Company*, 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 . . . .

We must determine whether the lease terminated automatically upon the total taking of the leasehold estate. The lease provides in the event of condemnation that the lease "shall, at the option of the landlord, terminate." leVison argues that this clause requires the landlord to give the lessee notice that he intends to exercise his option and terminate the lease. We disagree.

We have found no Texas case specifically addressing this issue. In *Goodyear Shoe*

*Machinery Co. v. Boston Terminal Co.,* 176 Mass. 115, 57 N.E. 214 (1900), the court denied a lessee any damages in an eminent domain proceeding where the lease contained a provision similar to the one in the instant case which provided:

"In case the premises, or any part thereof, shall be taken for any street or other public use, or by the action of the city or other authorities, * * * then this lease and the term demised shall terminate at the election of the lessors, or those having their estate in the premises."

Chief Justice Holmes speaking for the court said:

We are of opinion that the judgment appealed from was right. Of course, any valid taking of the whole premises would put an end to the lease (*O'Brien v. Ball*, 119 Mass. 28), and therefore the provision quoted must not be construed too literally in its application to the present case. The object is that which is pointed out in *Munigle v. City of Boston*, 3 Allen, 230, 232, and the meaning is that the landlord can terminate the right of the tenant to share in the damages. See, further, *Burbridge v. Railroad Co.*, 9 Ind. 546. Probably, if the clause had not dealt with the taking of a part as well as of the whole, and had referred only to a taking of the whole, it would have stipulated absolutely that the tenant's rights should end without requiring an election by the landlord. The election is inserted with reference to a partial taking.

*In re Widening Third Street in City of St. Paul,* 178 Minn. 552, 228 N.W. 162 (1929), the lease provided:

"If the premises or any part thereof, or any part of the improvements of which they form a part, shall be taken for any street or any other public use, or shall during the continuance of this lease, be destroyed by the action of the public authorities, then this lease and the term demised shall, at the option of either party, terminate."

The court held that the lessee was not entitled to share in the proceeds of condem-

nation although no notice was given by either party, saying:

In the instant case the parties evidently apprehended that the leased premises would be interfered with or taken by the city before the end of the lease they were making. They were not willing to let their rights rest upon the settled law applicable when property under lease is taken under the right of eminent domain. So the quoted clause was inserted. Its fair meaning appears to us to be that the term should end if and when the city took the entire leased premises, but, if only part were taken then either party had the option to end the term. If the whole demised premises were taken, nothing remained upon which either party could predicate an election or option. Hence, the whole premises being appropriated, and the parties having stipulated that that event ended the term, the lessee could claim no compensation for its leasehold except up to the time it thus ended, and the lessor became entitled to full compensation for the whole estate undiminished by any claim from the former lessee. As we construe the quoted clause of the lease, its meaning was that, in the event of the city appropriating the whole of the demised premises, the lessee's share in the damages was gone.

See also *County of Hennepin v. Holt*, 296 Minn. 164, 207 N.W.2d 723 (1973).

■ We hold the better rule to be that under the terms of a lease such as this, a total taking results in automatic termination of the lease. Thus, it is not necessary that the lessor give notice of his decision to terminate the lease. This holding makes it unnecessary for this court to consider appellant's other points of error.

The judgment of the trial court is reversed and judgment rendered that W. G. leVison take nothing by his claim and that City of Dallas has satisfied its obligation.