**BUCKLEY BROS. MOTORS, INC.,** formerly a Colorado corporation, and Robert E. Buckley, Donna M. Buckley, R. M. Buckley and Viola Buckley, Petitioners,

v.

**GRAN PRIX IMPORTS, INC.,**
Respondent.

No. 80SC38.

Supreme Court of Colorado,
En Banc.

Sept. 14, 1981.

Rehearing Denied Oct. 5, 1981.

George T. Ashen, John A. Steninger, Denver, for petitioners.

Davis, Moorhead & Ceriani, P.C., Gary J. Ceriani, Denver, for respondent.

ROVIRA, Justice.

The petitioners, Buckley Bros. Motors, Inc., formerly a Colorado corporation, and Robert E. Buckley, Donna M. Buckley, R. M. Buckley and Viola Buckley, appeal from a judgment specifically enforcing a contract to convey real property pursuant to the exercise of a purchase option. They contend that the trial court erred in finding the option agreement to be ambiguous and in considering extrinsic evidence in interpreting the instrument. The court of appeals affirmed, and certiorari was granted. We reverse.

On January 27, 1970, the Buckleys entered into a lease with Gran Prix Imports, Inc. (Gran Prix), whereby the Buckleys leased real property to Gran Prix. On the same day, the parties executed a separate document which gave Gran Prix an option to purchase the property.

The preamble of the purchase option provided in pertinent part:

"WHEREAS, the OPTIONOR and the OPTIONEE have on even date entered into a Lease of the real property hereinafter described . . . and,

"WHEREAS, it has been agreed by and between the OPTIONOR and OPTIONEE that an Option be extended . . . the parties hereby agree as follows. . . ."

The purchase option further provided that it was to remain in effect through March 1, 1980, unless sooner terminated according to its own terms. The purchase option required that as a condition precedent to the exercise of the option:

"All terms of *the Lease* of the real property as described in *said Lease* must be performed and carried out to the satisfaction of the OPTIONOR through the period in which *the Lease* is in full force and effect and up to the date of transfer of real property under this Option." (Emphasis added.)

Finally, the last paragraph of the option provided that:

"All options hereunder terminate as each period of lease terminates unless said option to extend lease is extended as therein provided then and in that case said option is extended during said option period. . . ."

The lease agreement, which was executed along with the option to purchase, provided for an initial term of three years. The lessee was further granted the right to extend the lease for two successive periods— the first for two years, the second for five years.

The lessee was required to give the lessors ninety days' written notice of its intent to extend the lease for either period. At the end of the initial three-year term, the lessee failed to provide the requisite notice, but the lessors agreed to extend the lease without any change in its terms. Two years later, however, the lessee again failed to notify the lessors of its intent to exercise its right to extend the lease. The lessors then notified the lessee, by letter dated March 10, 1975, that the lease and the option to purchase the property were terminated because of the failure to properly give notice to extend the lease.

The lessee retained possession of the property until a new lease, which superseded the original lease, was executed on July 9, 1975. This new lease differed from the original lease in several respects. First, it provided for an initial term of two years with the right to extend for three more years. Second, the rent payments were increased and the notice provisions were changed. Finally, the original lease contained a provision providing for the distribution of insurance proceeds in the event that the lessee exercised the purchase option following damage to the premises. In the new lease, this provision was deleted, and there was no mention of the purchase option at all.

On November 26, 1975, when Gran Prix attempted to exercise the purchase option, the Buckleys refused to convey the property, claiming that the purchase option terminated along with the original lease. Gran Prix filed an action for specific performance in the district court.

At trial, the court held that the option to purchase was ambiguous because it was unclear whether it specifically referred to the original 1970 lease agreement. The court permitted parol evidence in order to determine the intent of the parties and concluded that the purchase option merely required that there be a landlord-tenant relationship between the parties at the time of the exercising of the purchase option. Judgment was entered for Gran Prix, and the Buckleys were ordered to convey the real property. The court of appeals affirmed the order of the trial court.

## I.

The primary issue is whether the trial court erred in finding the option agreement to be ambiguous. Gran Prix claims that the purchase option is ambiguous because it is unclear whether the term "lease" refers specifically to the original lease entered into in 1970 or whether it refers generally to possession of the property under any leasehold relationship. If the purchase option is found to be ambiguous, the trial court properly allowed Gran Prix to introduce extrinsic evidence to show that the original lease was not a condition precedent to the exercise of the purchase option. *See Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978).

■ However, it is well established that the determination of ambiguity in a document is a question of law and that this court is not bound by the findings of the trier of fact. *Alley v. McMath*, 140 Colo. 600, 346 P.2d 304 (1959); *Antero & Lost Park Reservoir Co. v. Lowe*, 69 Colo. 409, 104 P. 945 (1921). Based upon a reading of the purchase option, we find that it is not ambiguous.

■ The purchase option first mentions the "lease" in the preamble. It is clear from the language used that the lease referred to is the original 1970 lease. ("WHEREAS, the OPTIONOR and the OPTIONEE have on even date entered into a Lease . . . ."). The parties do not dispute the fact that only the 1970 lease was executed on that date and that no other lease was in existence at that time.

Furthermore, language used in the penultimate paragraph of the purchase option clearly refers to the 1970 lease. This provision provided for the exercise of the purchase option in the event that the Buckleys decided to sell the property "at any time after the five (5) year period of the inception of the Lease and first option period . . . ." Under this provision, Gran Prix was given a right of first refusal "should [the Lease] be in full force and effect" when the Buckleys decided to sell the property.

Finally, the final paragraph of the purchase option also makes it clear that the option refers to the 1970 lease. This paragraph provides that the purchase option will "terminate as each period of lease terminates unless said option to extend lease is extended . . . ." Again, there is no dispute that the 1970 lease was the only lease in existence at the time of execution of the purchase *option*. The language of the purchase option clearly refers to the terms of the 1970 lease providing for the extension of that lease.

■ Words used in a document are to be given their plain meaning by the court construing the document. *Regan v. Customcraft Homes, Inc.*, 170 Colo. 562, 463 P.2d 463 (1970). These clauses, when given their plain meaning, clearly refer to the concurrently executed 1970 lease. Therefore, we conclude that as a matter of law, the purchase option agreement was not ambiguous.

■ It is axiomatic that when a document is unambiguous it cannot be varied by extrinsic evidence. *More v. Johnson*, 193 Colo. 489, 568 P.2d 437 (1977); *Hayutin v. Highway Dep't*, 175 Colo. 83, 485 P.2d 896 (1971); *Thompson v. Sweet*, 91 Colo. 552, 17 P.2d 308 (1932). Thus, the trial court erred in admitting extrinsic evidence to interpret the document. *Radke v. Union Pac. R.R.*, 138 Colo. 189, 334 P.2d 1077 (1958).

## II.

■ Having determined that the purchase option refers to the 1970 lease, we must now determine whether the continuing validity of that lease was a condition precedent to the exercise of the purchase

option. A reading of the option convinces us that it is.

The final paragraph of the purchase option indicates that the option will terminate "as each period of lease terminates" unless the lease is extended as provided in the lease document itself.

■ A term of the lease included the giving of ninety days' written notice prior to the exercise of the right to extend the lease. It is undisputed that this notice was not given. The lessee's failure to give the requisite notice of its intent to exercise its right to extend the lease resulted in the termination of that lease. The terms of the right to extend must be strictly adhered to in order to enforce the exercise of that right. *T. W. Anderson Mortgage Co. v. Robert Land Co.,* 480 P.2d 109 (Colo.App. 1970). *See also Rude v. Levy,* 43 Colo. 482, 96 P. 560 (1908). Thus, the failure of the lessee to give timely notice of its intent to extend the lease resulted in the termination of both the lease and the purchase option dependent thereon.

The purchase option further provided that as a condition precedent to its exercise:

"All terms of the Lease of the real property ... must be performed and carried out ... through the period in which the Lease is in full force and effect and up to the date of transfer ... under this Option."

This clause indicates that not only is the validity of the 1970 lease a condition precedent to the exercise of the option, but that each and every term of that lease must have been adhered to in order to properly invoke the provisions of the purchase option.

Once again, in construing a document, words are to be given their plain meaning. *Regan v. Customcraft Homes, Inc., supra.* A reading of these two clauses convinces us that the continued validity of the 1970 lease was a condition precedent to the exercise of the purchase option.

### III.

Gran Prix argues that the Buckleys, by their conduct, waived strict compliance with the written notice requirements.

■ It is undisputed that the lessors excused the lessee's failure to give proper notice at the end of the initial term of the lease. However, the record does not support its argument that the lessors intended this excusal to be construed as a waiver of further conditions or requirements. Furthermore, the 1970 lease contained a clause which provided that:

"[N]o assent, expressed or implied, to any breach of any one or more of the covenants and agreements hereof, shall be deemed or taken to be a waiver of any succeeding or other breach ...."

Here the lessors were under no duty to remind the lessee of its obligations under the lease, and the lessors' conduct does not excuse strict compliance with the written notice requirement. *See T.W. Anderson Mortgage Co. v. Robert Land Co., supra.*

■ The lessee's argument that it was a holdover tenant at the time of the exercise of the purchase option and, thus, was entitled to exercise the option is without merit. The cases cited by the lessee are all inapposite to the case at hand. Here the parties entered into a new lease, and the lessors' intent that the old lease and the purchase option were terminated was evident. While the lessee retained possession after the termination of the first lease under a holdover provision of that instrument, its status as a holdover tenant ended with the execution of the new lease.

Finally, the lessee argues that the 1975 lease does not affect its right to exercise the purchase option. It contends that the two leases are identical and that the second is a mere complement or confirmation of the first lease and does not abrogate it. Lessee cites the Maryland case of *Stedman v. Hill,* 195 Md. 568, 74 A.2d 41 (1950), for this proposition. In *Stedman,* however, the first lease entered into between the parties was self-renewing and thus was valid at the execution of the second lease. The court interpreted the second lease to be so consistent with the first lease as to not, in itself, terminate the first lease. However, the *Stedman* court recognized that the in-

tent of the parties was a material consideration.

In the case *sub judice*, the terms of the leases are different. Of particular importance is the fact that the 1975 lease makes no mention of the purchase option while the original lease provided for the distribution of insurance proceeds in the event that the purchase option was exercised following damage to the premises. Furthermore, the lessors sent the lessee a letter on March 10, 1975, informing the lessee that the 1970 lease and the purchase option were terminated; thus, the lessee was aware of the lessors' intent to terminate the first lease and the purchase option at the time of the execution of the second lease.

We conclude that the purchase option was dependent upon the continued existence of the original 1970 lease. The lessee's failure to adhere to the notice provision of the original lease resulted in the termination of that lease and of the purchase option.

The judgment is reversed.

LEE, J., does not participate.