**PROFESSIONAL HEALTH CARE,
INC., a Colorado corporation,
Plaintiff-Appellee,**

v.

**Glenn E. BIGSBY, III,
Defendant-Appellant.**

**No. 83CA0785.**

Colorado Court of Appeals,
Div. III.

Aug. 15, 1985.

Rehearing Denied Oct. 3, 1985.

Hamilton, Shand & McLachlan, P.C., Michael E. McLachlan, Durango, for plaintiff-appellee.

Duncan & Miller, Scott M. Miller, Durango, for defendant-appellant.

METZGER, Judge.

Defendant, Glenn E. Bigsby, III, appeals the trial court's judgment in favor of plaintiff, Professional Health Care, Inc. (Health Care), for damages resulting from the breach of a sales contract. We affirm.

Health Care was formed in 1977. John Rice (Rice), a non-physician, was one of its original incorporators and shareholders. Health Care had four additional shareholders, one of whom, Dr. Telford Davis, was a physician. The purpose of Health Care was to provide rural nursing services, home health care, and professional nursing services for doctors, clinics, and hospitals in the extreme rural areas of Colorado.

As part of this effort, Health Care opened the "Pagosa Family Clinic" in January 1981. The clinic's income resulted from leased office space for visiting physicians from Durango, and from revenues generated by a nurse practitioner in its employ. The five physicians who leased space from the clinic maintained their own patient records, did their own billings, and paid a flat rental fee to the clinic. Rice managed the clinic, and he set the amounts of the nurse practitioner's fees, controlled her work hours, and maintained the right to fire her.

However, Davis supervised the professional aspects of nurse practitioner's practice, which was done according to protocols he had set out. When she had questions about the office she consulted Rice; when she had health care questions she consulted Davis.

Defendant, Glenn E. Bigsby, III (Bigsby), is a doctor of osteopathy who wished to relocate his practice from Iowa to Pagosa Springs. He visited Pagosa Springs to look over the clinic in May 1981 and examined its records for the few months the clinic had been in operation. He reviewed all the books, accounts payable, accounts receivable, as well as patient treatment and billing records.

Bigsby signed a contract to purchase "the business known as the Pagosa Family Clinic" that same weekend. Although he was to pay $2,000 as a down payment at the time the contract was executed, Bigsby sent a check for $1,000 after his return to Iowa and told Rice he was "strapped for money." He paid an additional $1,000 when he took possession of the clinic on August 3, 1981. However, Bigsby refused thereafter to make any payments to Health Care.

Health Care initiated an action alleging breach of contract in February 1982. The trial court found that the contract was clear and unambiguous on its face, that it provided for the sale of a business rather than for the sale of a medical practice, that Bigsby had failed to prove any violation of the Colorado Medical Practice Act, and that Health Care was entitled to a judgment against Bigsby for the full amount of the contract minus a set-off in the amount of $810 for missing supplies and equipment.

## I.

■ Bigsby first contends that the trial court erred when it found that the contract between the parties was unambiguous and that the subject matter of that contract was the sale of a business. In our view, the trial court ruled correctly.

Generally, a determination whether the terms of a contract are ambiguous is a question of law. *Buckley Bros. Motors, Inc. v. Grand Prix Imports, Inc.*, 633 P.2d 1081 (Colo.1981). In ascertaining whether certain contract provisions are ambiguous, language used must be construed in harmony with the plain and generally accepted meaning of words employed, and reference must be made to all provisions of the agreement. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.*, 195 Colo. 253, 577 P.2d 748 (1978). The mere fact that there is a difference of opinion between parties regarding the interpretation of an instrument does not of itself create an ambiguity. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc., supra.* While we are not bound by the trial court's interpretation of contract language, *Buckley Bros. Motors, Inc. v. Grand Prix Imports, Inc., supra,* our own examination of the contract convinces us of the correctness of the trial court's conclusion.

Bigsby admitted that the contract consistently described the clinic as a "business," not as a "practice." It did not specify that Bigsby was to receive any rights with regard to patients; rather, it recited that: "Buyer is desirous of purchasing from owner the above business, equipment, supplies, and good will." The contract transferred the business and trade name "Pagosa Family Clinic" and Health Care agreed not to compete in Pagosa Springs.

Since the meaning of the agreement is clear on its face, it must be enforced as written. *People v. Johnson*, 618 P.2d 262 (Colo.1980). Thus, we agree with the trial court that this was a contract for the sale of a business, not for the sale of a medical practice.

## II.

■ Bigsby next contends that, even if the contract provided for the sale of a business, the actions of the nurse practitioner resulted in the illegal practice of medicine, and thus, the contract is unenforceable. We disagree.

An "advanced practitioner of nursing" is: "a professional nurse who by reason of postgraduate education and additional nursing preparation has knowledge, judgment, and skill beyond that required of a professional nurse ... and who has completed a nationally accredited educational program for preparation as an

advanced practitioner of nursing or who has passed a national certification examination of a nationally recognized accrediting agency adopted by the board." Section 12–38–103(1), C.R.S. (1984 Cum. Supp.).

The practice of professional nursing is defined in § 12–38–103(10), C.R.S. (1984 Cum.Supp.) as:

"the performance of both independent nursing functions and *delegated* medical and dental functions, including the initiation and performance of nursing care through prevention, diagnosis, and treatment of human disease, ailment, pain, injury, deformity, or physical or mental condition...." (emphasis added)

Section 12–38–128, C.R.S. (1984 Cum. Supp.) provides in pertinent part that: "Nothing in this article shall be deemed to prohibit any licensee from practicing practical or professional nursing independently for compensation upon a fee for services basis."

The nurse practitioner was a licensed registered nurse and certified nurse practitioner. She was employed by the clinic to provide nursing care. She was indirectly supervised by Davis and followed the protocols and directions he established. Davis testified that to his knowledge the nurse practitioner had always performed within the limits of the established protocols.

We hold that, given these circumstances, the actions of the nurse practitioner constituted only the practice of professional nursing and could not be construed to be the illegal practice of medicine. Thus, we agree with the trial court that the contract was enforceable.

### III.

Finally, Bigsby argues that the trial court erred in concluding that the contract provision relating to the division of his gross revenues as one method of payment for the business did not constitute an illegal division of a physician's fee pursuant to § 12–36–125, C.R.S. (1984 Cum.Supp.). We disagree.

The contract provided that Bigsby was to pay the greater of $1,000 per month or 20 percent of the gross revenues received in the operation of the business for a term of four years or until $15,000 was received by the seller. The trial court found that the provisions of § 12–36–125, C.R.S. (1984 Cum.Supp.), did not apply because the contract terms specified that only the gross revenues of the business were to be used as one of the methods of computation. Since the business itself is separate and distinct from the practice of medicine, we perceive no violation of the statute in the terms of the contract.

The judgment is affirmed, and the cause is remanded to the district court for entry of an amended judgment specifying the manner of payment in accordance with the stipulation of the parties.

STERNBERG and BABCOCK, JJ., concur.