**FIBREGLAS FABRICATORS, INC., Petitioner,**

v.

**Richard L. KYLBERG, and Edgewater Redevelopment Authority, a Colorado Urban Renewal Authority, a body corporate and politic, Respondents.**

**No. 89SC228.**

Supreme Court of Colorado, En Banc.

Sept. 24, 1990.

Rehearing Denied Nov. 13, 1990.

Chrisman, Bynum & Johnson, P.C., Robert L. Matthews, Ann E. Byrne, Boulder, for petitioner.

Faegre & Benson, Joseph M. Montano, Leslie A. Fields, Denver, for respondent Richard L. Kylberg.

No appearance on behalf of Edgewater Redevelopment Authority.

Justice VOLLACK delivered the Opinion of the Court.

Fibreglas Fabricators, Inc. (Fibreglas), petitioned for certiorari review of the court of appeals decision in *Edgewater Redevelopment Authority v. Fibreglas Fabricators, Inc.*, 773 P.2d 617 (Colo.App.1989). In *Edgewater Redevelopment Authority*, the court of appeals reversed the trial court's ruling that Fibreglas as lessee was entitled to share in the condemnation proceeds that were to be paid to Richard L. Kylberg (Kylberg), the respondent in this case and the former owner and lessor of the property acquired by Edgewater Redevelopment Authority in a condemnation action. We affirm the court of appeals in part and reverse in part.

### I.

In May 1982, Kylberg entered into an agreement with Fibreglas to lease property he owned in Edgewater, Colorado, to Fibreglas. The lease agreement provided for a five-year primary term with three unconditional renewal options of five years each. The primary term was to end April 30, 1987, "unless this Lease Agreement shall be canceled or sooner terminated as hereinafter provided." The agreement also provided for a "condemnation clause," which stated:

10.1 *Full Condemnation—Termination.* If, during the term of this Lease Agreement, the entire Leased Premises shall be taken as a result of the exercise of the power of eminent domain

or sold to the governmental authority in lieu of condemnation (hereinafter in this Article called a "Proceeding"), this Lease Agreement shall terminate and the rent shall be apportioned as of the date the governmental authority takes possession of the Leased Premises pursuant to such Proceeding.

In April 1986, the Edgewater Redevelopment Authority (Authority) initiated a condemnation action [1] to acquire, among other properties, the property Kylberg had leased to Fibreglas. Kylberg and the Authority subsequently stipulated to the validity of the condemnation action, and the Authority deposited $1,900,000 [2] with the court as preliminary compensation to Kylberg. *See* § 38–1–105(6)(a), 16A C.R.S. (1982). On August 20, 1986, the court ordered that title to the condemned property be vested in the Authority.

During the condemnation proceedings, Fibreglas asserted an interest in the condemnation proceeds of not less than $600,000, which Fibreglas stated was the fair market value of its leasehold interest in the property. Kylberg objected to Fibreglas's sharing in the condemnation proceeds. After concluding that the lease agreement was ambiguous on the issue of whether the parties intended Fibreglas to share in condemnation proceeds, the trial court held hearings on the issue.

Following the hearings, the court in January 1987 ruled that Fibreglas was entitled to a portion of the condemnation proceeds. Fibreglas's portion of the condemnation proceeds would be based on the remaining value of the primary term of the lease—to be measured from August 20, 1986, the date Fibreglas's leasehold interest terminated pursuant to the condemnation proceedings, to April 30, 1987, the date the primary term would have ended under the lease agreement.[3] Thus, under the court's

---

1. *See* § 31–25–105(1)(e), 12B C.R.S. (1986); §§ 38–7–101 to 38–7–107, 16A C.R.S. (1982 & 1989 Supp.).

2. Kylberg eventually was awarded $2,265,600 in compensation for the property. *See* §§ 38–7–

102, 38–1–105(3), and 38–1–107, 16A C.R.S. (1982).

3. The trial court found that the value of the lease for the eight months remaining in the primary term was $24,000, and that Fibreglas

order, Fibreglas would receive no compensation for its lease renewal options.

After the court's ruling, Kylberg filed three separate motions for assessment of attorney fees and costs against Fibreglas, pursuant to section 13–17–101, 6A C.R.S. (1987) (providing for assessment of attorney fees against a party suing or defending against an action· in bad faith), and pursuant to the lease agreement. The lease agreement provided in relevant part:

> 12.6 Indemnification. ... [Fibreglas] shall pay, and indemnify [Kylberg] against, all legal costs and charges, including attorneys' fees and expenses, lawfully and reasonably incurred in obtaining possession of the Leased Premises after default by [Fibreglas] hereunder or upon expiration or any earlier termination of this Lease Agreement (if [Fibreglas] wrongfully holds over) or in enforcing any covenant or agreement of [Fibreglas] contained in this Lease Agreement.

The court denied the motions for assessment of attorney fees and costs against Fibreglas.

Kylberg appealed the court's ruling that Fibreglas could share in the condemnation proceeds, and the court's ruling on attorney fees and costs.[4] Fibreglas appealed the court's ruling that Fibreglas was not entitled to compensation for its renewal options. After the appeals were consolidated, the court of appeals held that the lease agreement was not ambiguous, and that because the lease terminated when title to the property was vested in the Authority on August 20, 1986, Fibreglas had no compensable interest in the property after August 20, 1986. *Edgewater Redev. Auth. v. Fibreglas Fabricators, Inc.*, 773 P.2d 617, 618–19 (Colo.App.1989). The court of appeals also held that pursuant to the lease agreement Kylberg was entitled to attorney fees and costs.

## II.

Fibreglas and Kylberg have maintained throughout this case that the condemnation clause is unambiguous, but each argues that the condemnation clause results in a different legal effect. The trial court found that the condemnation clause was ambiguous because the clause could have more than one legal effect. We conclude that the condemnation clause is not ambiguous.

■ Interpretation of a written contract and the determination of whether a provision in the contract is ambiguous are questions of law, and this court need not defer to the trial court's interpretation of the contract. *See, e.g., Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo.1984); *Buckley Bros. Motors v. Grand Prix Imports*, 633 P.2d 1081, 1083 (Colo.1981); *Radiology Professional Corp. v. Trinidad Health Ass'n*, 195 Colo. 253, 256, 577 P.2d 748, 750 (1978).

■ In determining whether a provision in a contract is ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used, and reference must be made to all the agreement's provisions. *Radiology Professional Corp.*, 195 Colo. at 256, 577 P.2d at 750. The mere fact that the parties differ on their interpretations of an instrument does not of itself create an ambiguity. *E.g., id.* at 256–57, 577 P.2d at 750. A provision in a lease agreement is ambiguous if it is fairly susceptible to more than one interpretation. *See Davis v. M.L.G. Corp.*, 712 P.2d 985, 989 (Colo.1986). If a contract is not ambiguous, extrinsic evidence is not admissible to prove the parties' intent, and the parties' intent must be determined from the terms of the contract. *Buckley Bros. Motors*, 633 P.2d at 1083; *Radiology Professional Corp.*, 195 Colo. at 256, 577 P.2d at 750.

was entitled to this amount from the condemnation proceeds.

**4.** Kylberg separately appealed the trial court's ruling on assessment of attorney fees and costs

because he had already appealed the trial court's ruling on the condemnation-proceeds issue.

■ The condemnation clause unambiguously states in relevant part that if, during the term of the lease agreement, "the entire Leased Premises shall be taken as a result of the exercise of the power of eminent domain or sold to the governmental authority in lieu of condemnation ..., this Lease Agreement shall terminate and the rent shall be apportioned as of the date the governmental authority takes possession" of the premises. The clause is not reasonably susceptible to an interpretation other than that the lease agreement "terminates" when the "governmental authority" takes possession. Neither party suggests that the condemnation clause may be reasonably interpreted in more than one way; rather, the parties disagree only on the legal effect of the clause.

Although the clause may have different legal effects in different jurisdictions, as the trial court noted, the existence of such different legal effects does not render the clause ambiguous for purposes of interpreting the clause. *See, e.g., Weil v. Colorado Livestock Prod. Credit Ass'n*, 30 Colo.App. 301, 302, 494 P.2d 134, 136 (1971), *cert. denied* (1972); *accord Ryan v. Harrison*, 40 Wash.App. 395, 396, 699 P.2d 230, 232 (1985), *review denied* (1985). Similarly, the absence of a provision in the condemnation clause specifying whether Fibreglas is entitled to share in the condemnation proceeds does not render the clause ambiguous.[5]

### III.

■ The parties dispute the legal effect that should be given the lease agreement. Fibreglas argues that because the clause, and the lease agreement in general, does not specifically exclude Fibreglas from sharing in the condemnation proceeds, as a matter of law Fibreglas is entitled to a portion of the proceeds for compensation for loss of its leasehold interest in the property. Kylberg argues that when the Authority gained title to the property, under the terms of the condemnation clause

any leasehold interest Fibreglas held in the property was terminated, and Fibreglas thereafter held no compensable interest in the property.

■ A lessee generally is entitled to compensation for the condemnation of the lessee's unexpired leasehold interest in property. *See* Colo. Const. art. II, § 15; *Roth v. Wilkie*, 143 Colo. 519, 522, 354 P.2d 510, 512 (1960); *Alamo Land & Cattle Co. v. Arizona*, 424 U.S. 295, 303, 96 S.Ct. 910, 916, 47 L.Ed.2d 1 (1976). However, it is well established that a lessee may forego his or her right to compensation—and permit the landlord to receive all the condemnation proceeds—where the lease agreement contains a legally adequate "condemnation clause" or "automatic termination clause." *E.g., United States v. Petty Motor Co.*, 327 U.S. 372, 376, 66 S.Ct. 596, 599, 90 L.Ed. 729 (1946); *see generally* 2 *Nichols' The Law of Eminent Domain* § 5.06, at 5–97 to 5–101 (J. Sackman rev. 3d ed. 1989) (hereinafter *Law of Eminent Domain* ); Restatement (Second) of Property § 8.2 & comment f at 273–74, app. at 285 (1976). A condemnation clause operates to terminate the lease agreement between the landlord and lessee upon the taking of the leased premises through eminent domain. *See* 2 *Law of Eminent Domain, supra,* § 5.06[2], at 5–113. The condemnation clause in this case—providing that if "the entire Leased Premises shall be taken as a result of the exercise of the power of eminent domain or sold to the governmental authority in lieu of condemnation ..., this Lease Agreement shall terminate"—approximates typical condemnation clauses. *See, e.g., Capitol Monument Co. v. State Capitol Grounds Comm'n*, 220 Ark. 946, 948, 251 S.W.2d 473, 475 (1952); *State v. LeBlanc*, 319 So.2d 817, 820 (La.Ct.App. 1975); 2 *Law of Eminent Domain, supra,* § 5.06[2], at 5–113.

Most jurisdictions that have considered the legal effect of a condemnation clause providing only for automatic termination of

---

5. Because the clause is not ambiguous, the trial court erred in admitting extrinsic evidence on the issue of whether the parties had intended to share in the condemnation proceedings, and we do not consider the extrinsic evidence in the disposition of this case. *See, e.g., Buckley Bros. Motors*, 633 P.2d at 1083; *Radiology Professional Corp.*, 195 Colo. at 256, 577 P.2d at 750.

the lease upon condemnation have held that because the lessee's leasehold interest is destroyed at the time of condemnation, the lessee no longer has any interest in the condemned property for which he or she should be compensated, and the lessee is foreclosed from sharing in the condemnation proceeds. *See United States v. Right to Use and Occupy 3.38 Acres of Land*, 484 F.2d 1140, 1144 (4th Cir.1973); *Select Lake City Theatre Operating Co. v. Central Nat'l Bank in Chicago*, 277 F.2d 814, 817–18 (7th Cir.1960); *Wessells v. State*, 562 P.2d 1042, 1050 n. 30 (Alaska 1977); *Capitol Monument Co.*, 220 Ark. at 948, 251 S.W.2d at 475; *City and County of Honolulu v. Market Place, Ltd.*, 55 Haw. 226, 234, 517 P.2d 7, 15 (1973); *State v. Heslar*, 257 Ind. 307, 310, 274 N.E.2d 261, 264 (Ind.1971) (dictum); *State v. Starzinger*, 179 N.W.2d 761, 765 (Iowa 1970); *LeBlanc*, 319 So.2d at 820; *Riedel v. Plymouth Redev. Auth.*, 354 Mass. 664, 665 n. 2, 241 N.E.2d 852, 853 n. 2 (1968); *In re Site for Library in City of Minneapolis*, 254 Minn. 358, 361–63, 95 N.W.2d 112, 115–16 (1959); *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 193, 207 N.E.2d 747, 750 (1965); *Appeal of Scholl*, 292 Pa. 262, 264–69, 141 A. 44, 45–46 (1928); *J.R. Skillern, Inc. v. leVison*, 591 S.W.2d 598, 599–600 (Tex.Ct.Civ.App.1979), *review denied* (1980); *Norfolk S. Ry. Co. v. American Oil Co.*, 214 Va. 194, 196–200, 198 S.E.2d 607, 609–11 (1973) (dictum); *American Creameries Co. v. Armour & Co.*, 149 Wash. 690, 691, 271 P. 896, 896 (1928); *accord* 2 *Law of Eminent Domain, supra*, § 5.06[2], at 5–113 to 5–114; Restatement, *supra*, § 8.2 comment f, at 274, app. at 285; *see also Petty Motor Co.*, 327 U.S. at 375–76, 66 S.Ct. at 598–99 (Court relied on automatic termination clause to conclude that lessee had no right to share in condemnation proceeds).

This court has not specifically addressed the legal effect of a condemnation clause in a lease agreement providing for the automatic termination of the lease agreement upon condemnation of the leased premises. However, in *Leach v. LaGuardia*, 163 Colo. 225, 429 P.2d 623 (1967), we considered the effect of a termination clause analogous to a condemnation clause on the right of a lessee to share in condemnation proceeds. In *Leach*, the lessees asserted that they were entitled to share in the condemnation proceeds awarded by the city and county of Denver after the city and county condemned the leased property sometime after November 7, 1963. The lease agreement, executed in December 1962, provided in relevant part:

> [I]t is understood and agreed that in the event the landlord enters into a lease of 25 years or longer [covering the entire demised premises] or in the event the landlord decides to raze the building in which the demised premises are located, this lease may be terminated on ———————, or any time thereafter, ... upon giving not less than three months written notice, and said date for said termination under said notice shall be the date of the end of the terms of the lease....

> And the Lessor or Lessee is hereby granted the right to terminate this lease upon three (3) months notice in writing to the Lessor at anytime after the first day of January 1963.

*Id.* at 227, 429 P.2d at 624. The lessees did not dispute that the landlord had given notice to terminate the lease in accordance with the lease agreement, and that the lease was terminated pursuant to the lease agreement on November 7, 1963, prior to the condemnation of the property. This court held that because the lease agreement ended on November 7, 1963, the lessees at the time of condemnation "held no right or interest in the property in question and were not entitled to any portion of the proceeds." *Id.* at 228, 429 P.2d at 624.

### A.

Fibreglas argues that this court should adopt the "modern trend" of cases that have refused to foreclose a lessee from sharing in the condemnation proceeds solely on the basis of a condemnation clause that provides only that the lease terminates upon condemnation (hereinafter "automatic termination clause").

Although Fibreglas asserts that "numerous" cases have joined the "modern trend," Fibreglas cites only two cases, *Beaverton Urban Renewal Agency v. Koning,* 53 Or. App. 842, 847–49, 632 P.2d 1359, 1362–63 (1981), and *Maxey v. Redevelopment Authority of Racine,* 94 Wis.2d 375, 400–04, 288 N.W.2d 794, 806–07 (1980).

In *Koning,* the applicable lease provision stated that upon condemnation of the leased premises, "this lease *may be terminated at the option of either party* hereto upon written notice to the other." 53 Or. App. at 845, 632 P.2d at 1361 (emphasis supplied). The court found that neither party had exercised the option to terminate the lease, and applied the well established common-law rule that the lessee is entitled to share in the condemnation proceeds unless the lessee has waived that right in the lease agreement. *Id.* at 847, 849, 632 P.2d at 1362, 1363.

In *Maxey,* the lease provision stated in relevant part that if all the "rights, titles, interests and estates" of the lessors and lessees in the demised premises are sold in condemnation proceedings, "such condemnation *shall terminate the further liabilities* of both the lessors and lessees under this lease." 94 Wis.2d at 400, 288 N.W.2d at 806 (emphasis supplied). The court held that because the lease agreement did not "explicitly" provide that the lessees would be foreclosed from sharing in the condemnation proceeds, the lessees were entitled to share in the proceeds. *Id.* at 402, 288 N.W.2d at 807.

Neither case is applicable here. *Koning* and *Maxey* did not concern automatic termination clauses. In *Koning,* the court found that the lease agreement did not terminate until the condemnation because neither party had exercised its right to terminate the agreement prior to the condemnation. In *Maxey,* the court found that the condemnation terminated only the lessors' and lessees' "liabilities." We can find no holding in either case justifying a departure from the rule of law that an automatic termination clause effects the loss of a lessee's right to share in condemnation proceeds.

### B.

Fibreglas next argues that the cases holding that an automatic termination clause validly forecloses a lessee's right to share in condemnation proceeds have "no rational basis and should not be followed." Fibreglas argues specifically that an automatic termination clause is nothing more than a recitation of the common-law rule that the effect of a complete condemnation is to divest both a lessor and lessee of their rights to the property at the time of condemnation, and the recitation of the common-law rule in the lease agreement should not deprive the lessee of the common-law right to share in the condemnation proceeds.

The principles guiding our construction of the lease agreement require that we give effect to each part of the agreement that is capable of rational meaning. *See, e.g., Grimes v. Barndollar,* 58 Colo. 421, 434–35, 148 P. 256, 261 (1914). While it is true that the common-law rule permits the lessee to share in condemnation proceeds to the extent of his or her leasehold interest, *see Roth,* 143 Colo. at 522, 354 P.2d at 512 (1960), 2 *Law of Eminent Domain, supra,* § 5.06[2], at 5–115 n. 44, the parties to a lease agreement may properly agree that the lease agreement shall terminate upon condemnation, and that as a result the lessee shall not be entitled to share in the condemnation proceeds. We thus cannot conclude that the automatic termination clause in the lease agreement between Fibreglas and Kylberg has no effect.

We find it significant that the lease agreement provided that the lease agreement would terminate upon condemnation. By agreeing to this automatic termination clause, Fibreglas contracted away its common-law right to share in the condemnation proceeds. In accordance with the rule followed by a majority of the jurisdictions that have considered similar automatic termination clauses, Fibreglas's leasehold interest in the leased premises terminated at the time of condemnation, and Kylberg was not obligated to share the proceeds with Fibreglas.

We conclude that the court of appeals did not err in holding that Fibreglas is not entitled to share in the condemnation proceeds.[6]

## IV.

■ Fibreglas argues finally that the court of appeals erred in awarding Kylberg attorney fees pursuant to the lease agreement. We agree.

The lease agreement provides that Fibreglas shall pay and indemnify Kylberg for legal costs and charges, including attorney fees, "lawfully and reasonably incurred in obtaining possession of the Leased Premises if, upon expiration or termination of this Lease Agreement Tenant wrongfully holds over or in enforcing any covenant or agreement of Tenant contained in this Lease Agreement." According to this provision, Kylberg was entitled to attorney fees if Kylberg incurred legal expenses in obtaining possession of the "Leased Premises," or in "enforcing any covenant or agreement" contained in the lease.

■ It is clear that Kylberg did not incur legal expenses in obtaining possession of the "Leased Premises." The term "Leased Premises" is carefully defined in the lease to include the described parcels of land and the buildings and improvements thereon. The lease makes no mention of condemnation proceeds paid as compensation for the leased premises. Furthermore, Kylberg's attorney fees were not incurred because Fibreglas held over. A holdover tenant is one who remains in possession of the premises beyond the expiration of the lease. *See Mattas Motors v. Heritage Homes of Nebraska,* 749 P.2d 458, 459 (Colo.App.1987); *Black's Law Dictionary* 658 (5th ed.1979). Fibreglas did not hold over, but immediately surrendered possession of the premises upon condemnation. Therefore, Fibreglas's claim to a portion of the condemnation proceeds did not constitute a holding over.

Kylberg did not incur legal expenses "enforcing [a] covenant or agreement of [Fibreglas]." The covenant in question provided that the lease would terminate upon condemnation of the premises. Fibreglas did not bring suit to challenge the termination of the lease. Fibreglas brought suit to determine the legal effect of the termination on its right to share in the condemnation award. The lease did not specify whether its termination precluded Fibreglas from sharing in a condemnation award, and there is a split of authority on the issue. *Compare Pennsylvania Ave. Dev. Corp. v. One Parcel of Land,* 670 F.2d 289, 292 (D.C.Cir.1981) *and Maxey v. Redev. Auth. of Racine,* 94 Wis.2d 375, 400, 288 N.W.2d 794, 806 (1980) *with Direct Mail Servs. v. State of Colorado,* 557 F.Supp. 851, 854 (D.Colo.1983), *aff'd,* 729 F.2d 672 (10th Cir.1984) *and Wessells v. State,* 562 P.2d 1042, 1052 (Alaska 1977). Because Fibreglas did not agree to refrain from claiming a share of the condemnation award, Kylberg's legal expenses were not incurred enforcing a covenant or agreement of Fibreglas. The court of appeals erred in awarding Kylberg attorney fees pursuant to the lease agreement.

Judgment affirmed in part and reversed in part and case remanded to vacate judgment for attorney fees.

---

**6.** Our holding precluding Fibreglas from sharing in the condemnation proceeds disposes of a related issue on which we granted certiorari—whether the trial court erred in allowing compensation only for the primary term of the lease. Because Fibreglas was not entitled to share in the condemnation proceeds, the trial court did not err in ruling that Fibreglas did not have a compensable interest in the renewal options to which it was entitled under the lease agreement.