820 So.2d 726 (2002)
TARANTO AMUSEMENT COMPANY, INC. and Vincent Scott Clement, Appellants,
v.
MITCHELL ASSOCIATES, INC., Appellee.
No. 2001-CA-00970-COA.
Court of Appeals of Mississippi.
May 21, 2002.
*727 John G. McDonnell, David Clifton Morrison, attorneys for appellants.
Charles Pringle, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS, and IRVING, JJ.
THOMAS, J., for the court.
¶ 1. Mitchell Associates, Inc. sued for a determination that the Taranto Amusement Company, Inc., and Vincent Scott Clement's leasehold rights to a strip of land on Highway 90 in Biloxi, Mississippi had expired for failure to renew in the manner prescribed by the lease. The chancellor held that Taranto and Clements failed to give timely notice to renew and the lease was extinguished. Aggrieved, Taranto and Clements assert the following issues:
I. THE CHANCELLOR ERRED IN FINDING THAT THE WAIVER OF THE WRITTEN RENEWAL NOTICE OF THE THIRD RENEWAL IN 1995 DID NOT CONSTITUTE A WAIVER OF SUBSEQUENT WRITTEN RENEWAL NOTICES.
II. THE CHANCELLOR ERRED IN RULING THAT MITCHELL ASSOCIATES, INC. WAS WITHIN ITS RIGHTS IN TERMINATING THE APPELLANT'S LEASEHOLD RIGHTS IN THE PROPERTY FOLLOWING THE EXPIRATION OF THE THIRD RENEWAL TERM.
III. THE CHANCELLOR ERRED IN DENYING THE APPELLANT'S MOTION FOR A NEW TRIAL.
Finding no error, we affirm.

FACTS
¶ 2. The facts before the Court in this case are undisputed. Both parties filed an agreed statement of facts and asked that the trial court determine the case based on the question of law. On October 17, 1980, Mitchell Associates, Inc., leased a parcel of land fronting 115 feet on the north side of U.S. Highway 90, Beach Boulevard, to Taranto Amusement Company. The original or primary term of the lease was for five years beginning on December 1, 1980, and ending November 30, 1985. The lease included an option for Taranto to renew the lease for three successive terms of five years each. In order to exercise the renewal option, the lease required Taranto to give Mitchell ninety days notice in writing. The lease provides for a base monthly rental adjusted annually to reflect changes in the Consumer Price Index.
¶ 3. By lease agreement dated June 22, 1984, Taranto was granted options to renew the lease for two additional five-year terms after the first three had expired. Taranto met the requirements of the lease in 1985 and the lease was renewed for another five-year term. Similarly, in 1990, written notice was provided and Taranto renewed for another five-year term. On June 25, 1991, Taranto assigned its interest in the lease to Vincent Scott Clements as co-tenant. Mitchell consented to this assignment.
¶ 4. In 1995, no notice was given by either Clements or Taranto that the lease was to be renewed for another term. However, they remained in possession of the property and paid rentals with adjustments as though the lease had in fact been renewed. Mitchell did not terminate the *728 lease and permitted Clements to remain in possession of the property despite the lack of written notice. The third renewal term expired on November 30, 2000.
¶ 5. Neither Taranto nor Clements gave notice to Mitchell that they intended to renew the lease for a fourth renewal term. On November 10, 2000, Mitchell, acting through his attorney, notified Clements and Taranto that the lease term expiring on November 30 would not be extended and that their leasehold rights would terminate on that date and they should vacate the premises. Since the expiration of the third renewal term on November 30, 2000, Clements has remained in the property. Mitchell has not accepted rental payments, but rent has been paid into a trust account held by Clements and Taranto's attorney.
¶ 6. Harrison County Chancellor J.N. Randall, Jr. found that the lease includes separate options for renewal including the original three terms and the latter two renewal terms. Each option to renew is separately and individually numbered and each specifically includes the requirement of written notice at least ninety days in advance of the end of the term. The chancellor found that even if Mitchell waived the requirement in 1995, the requirement for the 2000 renewal would still be an independent and material requirement. The chancellor went on to find that Mitchell did not waive the necessity for timely written notice and was within its rights to terminate the leasehold rights in the property.

ANALYSIS

I. DID THE CHANCELLOR ERR IN FINDING THAT THE WAIVER OF THE WRITTEN RENEWAL NOTICE OF THE THIRD RENEWAL IN 1995 DID NOT CONSTITUTE A WAIVER OF SUBSEQUENT WRITTEN RENEWAL NOTICES?

II. DID THE CHANCELLOR ERR IN RULING THAT MITCHELL ASSOCIATES, INC. WAS WITHIN ITS RIGHTS IN TERMINATING THE APPELLANT'S LEASEHOLD RIGHTS IN THE PROPERTY FOLLOWING THE EXPIRATION OF THE THIRD RENEWAL TERM?
¶ 7. We combine the appellant's first two issues and examine them together. The findings of a chancellor will not be disturbed or set aside on appeal unless manifestly wrong and not supported by credible evidence, or unless an erroneous legal standard was applied. Memphis Hardwood Flooring v. Daniel, 771 So.2d 924, 930(¶ 30) (Miss.2000). All of the evidence before the chancellor and now before this Court comes from the agreed statement of facts.
¶ 8. The appellants argue that permitting them to remain in possession of the property for five years after expiration of the second option term constituted a waiver by Mitchell of the necessity of giving notice as required by the lease. The chancellor found this argument to have no basis in law or fact. Finding no Mississippi case law directly on point, the chancellor distinguished the two cases brought forward by Clements and Taranto, Bennett v. Waffle House, 771 So.2d 370 (Miss.2000), and Vice v. Leigh, 670 So.2d 6 (Miss.1995). Both of these cases concern the effect of repeated and/or long-standing defaults by a lessee upon the lessee's right to exercise the option to renew. Neither case involves the failure of a lessee to give notice of intent to exercise an option to extend or renew the lease.
¶ 9. Bennett dealt with a breach of the lease to which the lessor did not object for fifteen years, and the court held that the *729 lessor was estopped to use the breach as grounds for refusal of the lessee's option to renew. Bennett, 771 So.2d at 373. The breach was totally unrelated to the renewal option and occurred during the first fifteen year term. Id. In Vice, a primary lease term of fifteen years included an option to renew provided that the lessee was not in default. Vice, 670 So.2d at 6. On numerous occasions the lessee had sublet the property without consent, but there was evidence the lessor knew of the subleases and did not object or declare default. Id. at 8. The supreme court held that by failing to object to the violations of conditions during the term of the lease, the lessor had waived his right to use these breaches as grounds to deny lessee's right to renew. Id. at 10. Again, the breaches had nothing to do with the right to renew and occurred during the first lease term.
¶ 10. The Mississippi Supreme Court quoted a Nevada Supreme Court decision in Vice which stated:
[T]he distinction must be observed between a waiver of the right to terminate the lease and a waiver of the conditions precedent to the Lessee's right of renewal. A waiver is the intentional relinquishment of a known right ... Acceptance of rent clearly speaks an intent not to terminate a lease ... but it cannot be said that acceptance of rentals or other performance speaks any intent to release a Lessee from an unrelated promise or condition. The neglect of the landlord to strictly enforce his right of forfeiture for breach of a condition does not entitle the tenant to a renewal when such renewal is dependent upon faithful performance of conditions.
Vice, at 10 (citing Reno Realty & Inv. Co. v. Hornstein, 72 Nev. 219, 301 P.2d 1051, 1054-1055 (1956)).
¶ 11. The chancellor found that a case from Indiana, Carsten v. Eickhoff, 163 Ind. App. 294, 323 N.E.2d 664 (1975), explained the conclusions best. In Carsten, no notice was given despite sixty days being required expressly in the lease. Carsten, 323 N.E.2d at 667. Several years after the primary term had ended, the lessor gave notice that the lease was terminated. Id. The Indiana Supreme Court held that the holding over by the lessee and acceptance of rent by the lessor did not constitute a waiver of the written notice requirement of the lease. Id. at 669. The Indiana Supreme Court explained, "The reasoning behind demanding exact compliance with the terms of the [renewal] option including the notice provisions is that the Lessor is bound to grant the additional term while the Lessee is free to accept or reject it." Id. at 300, 323 N.E.2d 664.
¶ 12. Buckley Brothers Motors, Inc. v. Grand Prix Imports, Inc., 633 P.2d 1081 (Colo.1981), is also on point. In Buckley, the lease to Grand Prix was for a primary term of three years with options to renew for two successive terms of two and five years. The lease required ninety days notice. After the primary term, Grand Prix failed to give notice as required by the lease but remained in possession of the property for the length of the two-year term. Buckley Bros. Motors, Inc., 633 P.2d at 1082. At the conclusion of this time period, Grand Prix again failed to give notice, and Buckley notified Grand Prix that the lease would be terminated. The court held "[T]he lessors were under no duty to remind the lessee of its obligations under the lease, and the lessors' conduct does not excuse strict compliance with the written notice requirement." Id. at 1084.
¶ 13. Under Mississippi case law, a "waiver" presupposes a full knowledge of a right existing, and an intentional surrender or relinquishment of that right. It contemplates something done designedly *730 or knowingly, which modifies or changes existing rights, or varies or changes the terms and conditions of a contract. It is the voluntary surrender of a right. To establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived. Ewing v. Adams, 573 So.2d 1364, 1369 (Miss.1990) (quoting Ballantine's Law Dictionary 1356 (3d ed.1969) (citations omitted)). The chancellor found it significant that each of the five renewal options are separately set forth in individually numbered sections of the lease and amendment. The terms and conditions are repeated in each section. The chancellor held that not following the correct procedure under the option for the third renewal term did not constitute a waiver of the requirements under the separately listed fourth renewal term.
¶ 14. We find the chancellor's decision to be supported by the evidence and not manifestly wrong. Mitchell Associates, Inc., did not waive the written notice requirement for the fourth renewal term and was within its rights in terminating the leasehold rights.

III. DID THE CHANCELLOR ERR IN DENYING THE APPELLANT'S MOTION FOR A NEW TRIAL?
¶ 15. "Trial judges are vested with considerable discretion in ruling on motions for new trial, and it has been noted on numerous occasions that `[t]his Court will reverse a trial judge's denial of request for new trial only when such denial amounts to a[sic] abuse of that judge's discretion.'" Muhammad v. Muhammad, 622 So.2d 1239, 1250 (Miss.1993) (citing Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass'n, 560 So.2d 129, 132 (Miss. 1989)). The chancellor was able to examine the evidence and make specific findings in his opinion. We find that the chancellor should be affirmed as his findings were supported by the substantial evidence in the record and there was no abuse of discretion.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.