229 So.2d 545 (1969)
BROOME CONSTRUCTION COMPANY, Inc.
v.
BEAVER LAKE RECREATIONAL CENTER, INC.
No. 45475.
Supreme Court of Mississippi.
November 10, 1969.
Rehearing Denied January 12, 1970.
William E. Andrews, Purvis, Zachary & Weldy, Hattiesburg, for appellant.
Jesse W. Shanks, Purvis, for appellee.
ETHRIDGE, Chief Justice.
The issues in this suit on a construction contract involve the admissibility of parol evidence to show that a proffered instrument was not the complete contract, and mutual rescission or abandonment of a contract. Broome Construction Company, Inc., appellant, brought this action in the Chancery Court of Lamar County against Beaver Lake Recreational Center, Inc., for damages and specific performance on a contract under which Broome was to clear, dig, and construct a lake for the defendant. *546 After a lengthy hearing, the chancery court, by necessary implication, found that the contract as executed required approval by the Farmers' Home Administration, which never approved it; and further held that Broome had "voluntarily relinquished" or rescinded the contract with the consent of Beaver Lake. However, the court awarded damages of $4,261.17 to Broome for work which it had already done in clearing 19.5 acres, and for certain plans and cost of bonds. Broome appeals, asserting that the court erred in both respects and that it should be awarded a decree for specific performance and more adequate damages. We conclude that the decree should be affirmed.
Beaver Lake is a non-profit corporation which owns a recreation center in Lamar County near Purvis. It was organized and is operated by local people, apparently as a country club, with a club house, swimming pool, and golf course. The controversy stems from Beaver Lake's efforts to add a man-made lake to its physical plant. Broome is a contractor specializing in heavy construction.
Negotiations between Broome and Beaver Lake apparently commenced in January 1966, when Broome contacted Beaver Lake's directors and volunteered to construct the lake at a price within the corporation's budget on the basis of plans and specifications which he had prepared by R.L. Morrison, an engineer. Although interested in the offer, Beaver Lake was unable to accept, because the federal Farmers' Home Administration, which was the guarantor of the loan, preferred competitive bidding. Broome therefore agreed to release its plans and specifications to other contractors and to bid competitively against them, with the understanding that if it did not secure the contract, Beaver Lake would reimburse it for the cost of the plans.
Beaver Lake invited bids, and on January 17 opened them and accepted Broome's. On January 19, 1966, Beaver Lake, by its president and secretary, executed the contract. Beaver Lake's officers signed it in a local F.H.A. office; Broome, in a local bank. The executed contract and the attached plans and specifications were then forwarded to Jackson for approval by the FHA. Pursuant to stipulations in the contract, Broome obtained a performance bond, and on April 22 Beaver Lake instructed him to commence work under the contract. Shortly thereafter, Broome's subcontractor began clearing the lake bed and dam site, and continued with this work for several months.
While this work was in progress, the specifications upon which Broome's contract was based were disapproved by the FHA, and Morrison was requested by Beaver Lake to draw plans satisfactory to FHA. The revised plans were substantially more demanding than the original, and FHA approved them. Beaver Lake invited Broome to revise its original bid of $48,000 in light of the revisions, and Broome entered a new bid of $75,000. Other contractors were invited to bid, with H.R. Morgan Contracting Company entering a bid of $58,000. In a letter dated August 17, 1966, Broome wrote Beaver Lake reaffirming its "willingness to work with you on the matter. We would not object to giving up our contract with you on all items except the clearing." On August 25, when, according to Beaver Lake, it became apparent that Broome's new bid would not bring him the contract, Beaver Lake by letter formally directed Broome to cease the clearing work.
On September 3 Beaver Lake awarded the contract for construction of the lake to Morgan on its bid of $58,000, and on December 9, offered Broome $1,665 in compensation for work done. Broome refused the tender and brought this action. Broome contends that the contract with Beaver Lake executed on January 9 was complete unto itself, that it required no precedent approval by FHA, and argues that its negotiations with Beaver Lake concerning the revised specifications were undertaken with an eye to mere modification of the existing contract under an adjustment clause, not a new contract. On the other hand, Beaver *547 Lake denies that an enforceable contract ever existed. It contends that an express, written provision of Broome's contract required approval of plans and specifications by the FHA as a prerequisite to enforceability, and that this provision had either been lost or removed from the copy of the contract offered in evidence by Broome.
First: On conflicting evidence the trial court was justified in concluding that the construction contract contained a provision on a separate sheet requiring approval of it by FHA, and there is no dispute that it never was approved by FHA. The copy of the contract between Broome and Beaver Lake which was in the possession of Broome and was introduced in evidence did not contain the approval clause, and Broome said that it never was in the executed contract. On the other hand, the president and secretary of Beaver Lake, who executed the document, said that it definitely was in the contract. Moreover, Broome was well aware that the construction funds were to come from a loan insured by the FHA. He appeared at several meetings of the board of directors of Beaver Lake for discussions of the proposed contract. There was a direct conflict of evidence on the existence of the FHA approval clause in the contract. The chancery court was warranted in finding that it was in the instrument when executed.
Appellant argues that the trial court erred in overruling its objections to the introduction of evidence by Beaver Lake to "vary the written terms" of a contract. The parol evidence rule does not apply, unless both parties to a contract have consented to it as a complete and accurate integration of that contract. The particular writing asserted by Broome to constitute the contract is claimed by Beaver Lake not to be a complete and accurate integration of that instrument, because it omits the FHA approval clause. The testimony for appellee, admitted in evidence, contested the completeness of the document offered by appellant. This was an issue of fact. 3 Corbin on Contracts § 573 (1960). In short, the parol evidence rule does not become applicable unless there is an integration of the agreement, that is, unless the parties have assented to a certain writing as a statement of the agreement between them. Accordingly, it may be shown by parol evidence not only that the contract was never executed or delivered as a contract, but also that the proffered instrument was not the complete contract, or that its validity was impaired by fraud, illegality, duress, mistake, lack of or failure of consideration rendering the agreement voidable or void. Jones v. Index Drilling Co., 251 Miss. 578, 170 So.2d 564 (1965); 4 Jaeger, Williston on Contracts §§ 631-634 (3d ed. 1961); 32A C.J.S. Evidence § 933 (1964).
Second, assuming the contract between the parties to be valid without FHA approval, the chancery court found that the contract was "voluntarily relinquished by the complainant in all respects except the `clean-up' portion thereof. * * *" There was ample evidence to support this finding of a mutual and voluntary rescission or abandonment of the contract.
Rights acquired under a contract may be abandoned or relinquished by agreement or conduct clearly indicating such purpose. Intent to abandon or rescind may be inferred from conduct of the parties which is inconsistent with the continued existence of the agreement. Mutual assent to rescind or abandon a contract may be manifested in other ways than by words. 2 Restatement of Contracts § 406 (1932); 17 Am.Jur.2d, Contracts § 494 (1964); 17A C.J.S. Contracts § 412 (1963).
Affirmed.
RODGERS, BRADY, PATTERSON and SMITH, JJ., concur.