798 So.2d 620 (2001)
G.V. KIRKLAND a/k/a George V. Kirkland, Appellant/Cross Appellee,
v.
CHINITA LAND DEVELOPMENT, INC., Juanita M. Rose and William Lambert, Appellees/Cross Appellants.
No. 2000-CA-00620-COA.
Court of Appeals of Mississippi.
October 23, 2001.
*621 D. Mitchell McCranie, G. Eric Geiss, Gulfport, Attorneys for Appellant.
Harry M. Yoste Jr., Gulfport, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., THOMAS, and IRVING, JJ.
IRVING, J., for the Court:
¶ 1. This action arose out of a complaint filed by G.V. Kirkland against Chinita Land Development, Inc., Juanita Rose, president of Chinita, and William Lambert (the defendants). Kirkland alleged that Chinita had breached the lease agreement executed by Chinita and himself. The lease agreement had been subleased by Kirkland to William Lambert. Kirkland asked the lower court to deem both leases valid and enjoin the defendants from interfering with his lease rights. He further demanded an accounting of money owed to him and asked for an award of attorney's fees and court costs. In response, the defendants filed an affirmative defense asserting that the lease allowed termination without notice following a default by the lessee for more than fifteen days and that such default did occur. The defendants further sought late rentals and fees, damages for Kirkland's filing of a lis pendens,[1] and attorney's fees and court costs. The trial judge, sitting as the trier of fact, *622 ruled that Kirkland failed to meet his burden of proof and therefore denied his complaint. The judge also denied the defendants' request for fees and costs. Finding no reversible error, we affirm.

FACTS
¶ 2. In 1978, Rose, co-owner of Chinita Land Development, Inc., leased property to Kirkland which he used for an automotive repair business. In 1986, Kirkland, with the authorization of Rose, subleased the property to Lambert. Doris Sager Kirkland, Kirkland's former wife, routinely paid Kirkland's bills, which included the rent payment to Rose. In 1990, the payments were not paid in a timely fashion on several occasions. At times, the checks were late, while others were returned due to insufficient funds. The parties disagree about the payments and the events pertaining to them during the months of September and October. Kirkland asserts that he sent the checks, but Rose claims she never received them. In October, a month Rose claims she never received a payment, Rose conferred with Lambert and agreed to terminate the lease with Kirkland and grant a new lease to Lambert, thereby also terminating Kirkland and Lambert's sublease agreement. Neither Rose nor Lambert notified Kirkland of this termination of the old agreement and creation of the new one until November 2. Rose informed Kirkland by letter that his lease had been terminated per the lease agreement which she claims authorized termination, without notice, following a default. It is from this action that the claim arose.

ANALYSIS OF THE ISSUES PRESENTED

I. Burden of Proof
¶ 3. Kirkland asserts that the trial judge committed manifest error when he ruled that Kirkland had failed to meet his burden of proof. While acknowledging that it was not possible to reconcile the differences between the plaintiff's witnesses and the defendants', the trial judge nevertheless adjudged that the evidence was insufficient to prove by a preponderance of the evidence that Kirkland had delivered the payments. In short, the judge ruled that Kirkland had failed to meet his burden.
¶ 4. Kirkland disputes the trial judge's findings and points to the testimony of Violet Harris in support of his argument that the trial judge erred. Harris testified that she accompanied Doris to Rose's house when Doris delivered the September payment. Harris also testified regarding the events leading up to the delivery of the September payment. Harris testified that she and Doris met Kirkland at the shop and obtained the check from him. Doris put the check in an envelope, and the two of them delivered the check to Rose. Doris then testified that she specifically "handed [Rose] the check."
¶ 5. In regards to the October payment, Doris testified that she remembered going to Rose's home to deliver the check. According to Doris, she was accompanied by Billy Faulk, one of her employees. She testified that she took the check to the "side door" and recalled seeing several children playing out in the back yard. Billy Faulk corroborated this testimony and added that Doris had an additional $10 bill with her to account for the late fee. With the previously mentioned testimony, Kirkland argues that he did meet his burden.
¶ 6. Not surprising, Chinita Land and Rose assert that the trial court did not err in finding that Kirkland failed to meet his burden of proof. They point out that while Harris and Faulk testified that Harris and Faulk accompanied Doris to make the September *623 payment, neither of them was able to testify that they actually saw the checks in question. Harris, when cross examined, testified that she did not see the amount of the check.[2] Rose testified that she never received the checks that Harris and Faulk testified about.
¶ 7. Chinita Land and Rose argue that Kirkland's contention, that the decision of the trial judge was manifestly wrong, is premised solely on the fact that a greater number of witnesses testified on his behalf than on hers. Chinita Land and Rose further point out that the chancellor, as trier of fact, was the sole judge of the credibility of witnesses and that the number of witnesses has never been the standard of credibility. We agree. "As a matter of common sense as well as common law, the fact finder surely must have the benefit of viewing the manner and demeanor of the witnesses." Culbreath v. Johnson, 427 So.2d 705, 708 (Miss.1983). "The trial judge saw these witnesses testify. Not only did he have the benefit of their words, he alone among the judiciary observed their manner and demeanor. He was there on the scene. He smelled the smoke of battle." Id.
¶ 8. The law is well settled that the findings of fact of a trial judge, sitting as the fact finder, will not be disturbed unless they are manifestly wrong or clearly erroneous. Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983); UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc., 525 So.2d 746, 754 (Miss.1987). Of course, when the trial judge has utilized an erroneous legal standard, no deference is required upon appellate review. Brooks v. Brooks, 652 So.2d 1113, 1117 (Miss. 1995).
¶ 9. There will be conflicting testimony in nearly every case, and it is within the province of the trier of fact, in this case the judge, to determine which version of the facts is more credible. Here the judge did just that. We are required to view the evidence in the light most favorable to sustaining the lower court's finding. Gossett v. State, 660 So.2d 1285, 1294 (Miss.1995). We, adhering to our standard of review, cannot say that the trial judge was manifestly in error or used an erroneous legal standard in his determination; therefore, we uphold his ruling.

II. Waiver of Right to Rescind
¶ 10. Kirkland argues that Chinita Land waived any right it may have had to rescind the contract due to default by continuously accepting the late payments. Kirkland cites Matheney v. McClain, 248 Miss. 842, 161 So.2d 516 (1964), as authority for the position that the right to rescind a contract is waived by a party who, after discovery of facts which would entitle him to rescind, treats the contract as a subsisting obligation and leads the other party to believe that the contract is still in effect.
¶ 11. Kirkland asserts that even though his payments were late on several occasions, each time Rose and Chinita Land accepted the payments along with the late fee, the acceptance served as a continuance of the contract. These actions, Kirkland argues, acted as a waiver of Chinita Land and Rose's right to rescind.
¶ 12. This argument by Kirkland is directly contradicted by the express terms of the lease agreement. Paragraph X states in pertinent part that:
[I]n the event the Lessor shall fail to exercise any right, power or option immediately upon the same arising, such failure shall not be construed as a waiver *624 of the right to exercise that right, power or option at a subsequent time, and failure on the part of the Lessor to insist upon a strict compliance with any of the terms of this agreement by Lessee shall not be construed as a waiver of the right of Lessor to insist upon such strict compliance in the future.

(emphasis added). In light of the clear and unambiguous terms of the contract, Kirkland's argument concerning a waiver is patently untenable. Nothing said in Matheney supports Kirkland's contention that the express terms of the lease agreement should be ignored. Chinita Land's right to terminate the lease agreement was a recurring right based upon reoccurring defaults on the part of Kirkland. Accordingly, we affirm the decision of the trial court.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED ON DIRECT AND CROSS APPEALS. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] The lis pendens was orally dismissed at trial.
[2] The specific question was: "[D]id you ever see the amount of the check, or do you have those kind of details?"