881 So.2d 333 (2004)
Clarence E. FLETCHER and CEF Enterprises, Inc., Appellants,
v.
U.S. RESTAURANT PROPERTIES, INC., Appellee.
No. 2003-CA-01555-COA.
Court of Appeals of Mississippi.
August 24, 2004.
*335 David R. Sparks, Tupelo, attorney for appellants.
Martha Bost Stegall, Tupelo, attorney for appellee.
EN BANC.
MYERS, J., for the Court.
¶ 1. Clarence E. Fletcher and CEF Enterprises, Inc. (CEF) filed a complaint in the Chancery Court of Lee County seeking a declaratory judgment against U.S. Restaurant Properties, Inc. (USRP). CEF argued that a commercial lease between it and USRP had been modified and that USRP was barred by the doctrines of waiver, equitable estoppel, and laches from seeking rent payments based on gross sales figures. USRP answered CEF's complaint and also filed a counterclaim. The trial court ruled that CEF was responsible for the full amount of rent based on the terms of the lease. As a result, CEF filed a notice of appeal and now requests our review of the following issues:

I. Whether The Subsequent Conduct Of The Parties Modified The Lease

II. WHETHER THE DOCTRINES OF WAIVER, EQUITABLE ESTOPPEL, AND LACHES PREVENT USRP FROM COLLECTING PERCENTAGE RENT BASED ON GROSS SALES

STATEMENT OF FACTS
¶ 2. In 1983, CEF entered into a twenty-year lease agreement with Burger King Limited Partnership II. The lease covered a piece of real property in Columbus, Mississippi, occupied by a Burger King franchise restaurant. The lease called for the payment of a minimum rent ($5,842.73/mo) and an additional rent based on a percentage of the restaurant's gross sales (8.5%).
*336 ¶ 3. From the inception of the lease, CEF calculated its percentage rent on the basis of net sales instead of gross sales. CEF reported its sales monthly to USRP, but the figure listed on the report was labeled simply as "sales" and the computation of that figure was not disclosed on the reports.
¶ 4. In 1996, Burger King Limited Partnership II assigned the lease to USRP and CEF continued to calculate and pay its percentage rent in the same fashion. In 2002, USRP performed an audit of the franchise and discovered for the first time that CEF had been calculating and paying its percentage rent on the basis of net sales. As a result, USRP made a demand on CEF for unpaid percentage rent plus interest. After CEF declined to pay the additional amount, USRP notified CEF that it was terminating the lease. An agreement was ultimately reached shortly thereafter that allowed the franchise to remain open.
¶ 5. Pursuant to that agreement, CEF calculated an estimate of the rent in dispute and placed that amount into the registry of the Lee County Chancery Clerk. CEF then filed a civil action in the Chancery Court of Lee County seeking a declaration that the lease had been modified and that USRP was barred by the doctrines of waiver, equitable estoppel, and laches from seeking percentage rent based on gross sales. USRP filed an answer and counterclaim and the parties made the following stipulations:
1. The lease which is the subject of this lawsuit provides for a two-tiered rental payment. One tier is a base rental that is a fixed amount per month. The second tier is a percentage rental which the lease provides will be paid on gross sales.
2. Since the inception of the lease, CEF paid percentage rentals based on net sales rather than gross sales.
3. During the life of the lease, no lessor has taken issue with the fact that the percentage rental was paid on net sales rather than gross sales. The first instance in which an audit on the rental payments was conducted was in May, 2002.
4. USRP was not the original lessor under the lease, but had been the lessor since June, 1996. The lease which is the subject of this action is the only lease CEF has had with Burger King or related entities.
5. CEF has provided USRP a monthly report of sales figures on a simple form that did not distinguish between net sales and gross sales but simply stated the dollar amount of sales for the month being reported.
6. Prior to June, 2002, USRP had never demanded percentage rentals on any basis other than which it had been receiving from 1996 to 2002.
7. No statement was made by any representative of either lessor to CEF after the lease was entered stating that percentage rent could be paid on a net basis as opposed to a gross basis.
8. If Clarence Fletcher were called to testify, he would state that he was acting on a statement made to him by an unidentified representative of the Burger King company in 1979. CEF has calculated what it estimates to be the amount of rent in dispute in this matter, and has made a deposit of funds into the registry of the Chancery Court Clerk.
¶ 6. After reviewing the stipulations and briefs, the chancellor ruled that there had been no modification of the lease, and that the doctrines of waiver, equitable estoppel, and laches did not apply. The chancellor ruled that CEF was responsible for the *337 full amount of rent based on the terms of the lease. As a result, CEF filed a timely notice of appeal.

LEGAL ANALYSIS

I. WHETHER THE SUBSEQUENT CONDUCT OF THE PARTIES MODIFIED THE LEASE
¶ 7. "The findings of a chancellor will not be disturbed or set aside on appeal unless manifestly wrong and not supported by credible evidence, or unless an erroneous legal standard was applied." Taranto Amusement v. Mitchell Assoc., 820 So.2d 726, 728(¶ 7) (Miss.Ct.App.2002). The subsequent actions of parties pursuant to a contract may support a finding that the original contract has been modified to an extent consistent with the subsequent course of conduct. Kight v. Sheppard Bldg. Supply, Inc., 537 So.2d 1355, 1359 (Miss.1989) (citing Stinson v. Barksdale, 245 So.2d 595, 597-98 (Miss.1971)). "What the parties to a contract consistently do thereunder is evidence of what the contract between them required that they should do." Delta Wild Life & F., Inc. v. Bear Kelso Plant., Inc., 281 So.2d 683, 686 (Miss.1973).
¶ 8. In the instant case, however, there is no issue of ambiguous contract language. The parties stipulated that the language of the lease requires CEF to pay percentage rent based on gross sales. Instead, CEF argues that its payment of percentage rent based on net sales over a period of almost nineteen years effectively modified the written lease. Essentially, CEF argues that USRP's acceptance of such payment constituted an abandonment of that right under the lease. In support of this argument, CEF directs our attention to Broome Construction Co. v. Beaver Lake Rec. Ctr., Inc., 229 So.2d 545 (Miss.1969).
¶ 9. Broome involved a dispute over a construction contract. Beaver Lake was a non-profit corporation which owned a recreation center in Lamar County. Broome was a contractor specializing in heavy construction. The controversy stemmed from Beaver Lake's efforts to add a man-made lake to its physical plant.
¶ 10. Beaver Lake accepted bids on the project and ultimately accepted Broome's bid. A contract was entered between the two parties and Broome began clearing the lake bed and dam site. While this work was in progress, the specifications upon which Broome's contract was based were disapproved by the guarantor of the loan.
¶ 11. As a result, the guarantor requested that Beaver Lake revise its plans in order to gain approval. The plans were ultimately approved but they were substantially more demanding than the original. Beaver Lake then invited Broome to revise its original bid of $45,000 and Broome entered a new bid of $75,000. Other contractors were invited to bid as well.
¶ 12. Broome then wrote Beaver Lake a letter reaffirming his "willingness to work with [it] on the matter." Broome also wrote, "[w]e would not object to giving up our contract with you on all items except the clearing."
¶ 13. When Beaver Lake accepted another bid of $58,000 instead of Broome's, Beaver Lake wrote a formal letter to Broome directing him to cease the clearing work. Broome refused and brought action in the Chancery Court of Lamar County.
¶ 14. The chancellor found that the contract was voluntarily relinquished by Broome in all respects except the clean-up portion. Id. at 547. The chancellor found there was ample evidence to support a finding of mutual abandonment. Id. The supreme court affirmed the lower court's *338 decision ruling that "[r]ights acquired under a contract may be abandoned or relinquished by agreement or conduct clearly indicating such purpose." Id. The court also ruled that intent to abandon may be inferred from conduct of the parties which is inconsistent with the continued existence of the agreement, and mutual assent to abandon a right under a contract may be manifested in other ways than by words. Id.
¶ 15. Broome is clearly distinguishable from the case sub judice because the contractor had actual notice that the contract was rejected by the guarantor of the loan. The contractor also agreed in writing that he would allow for the modification of the original contract. Unlike Broome, there is no evidence that USRP had any knowledge that CEF was paying percentage rent contrary to the unambiguous terms of the lease. There is also no evidence that USRP agreed to accept percentage rent based on net sales. In fact, the parties stipulated that CEF only provided USRP with a monthly report of sales figures on a simple form that did not distinguish between gross and net sales.
¶ 16. CEF asserts that USRP should not have assumed that CEF's calculations were correct. We disagree. As the chancellor noted, USRP "was entitled to expect those payments to be the correct amount and submitted in good faith." The implication that USRP somehow knew that CEF was not paying percentage rent according to the terms of the lease is completely contradicted by the record which includes some of the monthly reports that CEF sent to USRP and the stipulations made on the record.
¶ 17. The lease was not modified, and USRP did not abandon its right to receive percentage rent based on gross sales. We find the chancellor's decision to be supported by the evidence and not manifestly wrong.

II. WHETHER THE DOCTRINES OF WAIVER, EQUITABLE ESTOPPEL, AND LACHES PREVENT USRP FROM COLLECTING PERCENTAGE RENT BASED ON GROSS SALES

1. Waiver
¶ 18. CEF argues that USRP waived its right to percentage rent based on gross sales by continuously accepting the percentage rent tendered. "[A] waiver presupposes a full knowledge of a right existing, and an intentional surrender or relinquishment of that right." Taranto Amusement, 820 So.2d at 729-30 (¶ 13). "To establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived." Id.
¶ 19. As noted above, the parties stipulated that USRP was not aware that CEF had been paying percentage rent based on net sales until May 2002. One month later, USRP made a formal demand for unpaid rent. CEF presented no evidence that USRP knowingly surrendered its right to collect percentage rent based on gross sales after it became aware of CEF's conduct. To the contrary, USRP took immediate action to collect the difference.
¶ 20. Moreover, Section 8.10 of the lease is a non-waiver provision that states:
NON-WAIVER. The failure of the Lessor to insist upon strict performance of any of Lessee's obligations under this Lease shall not be deemed a waiver of any rights or remedies that Lessor may have and shall not be deemed a waiver of any subsequent breach or default by Lessee.
*339 ¶ 21. In Kirkland v. Chinita Land Development, Inc., 798 So.2d 620, 623-24 (¶ 12) (Miss.Ct.App.2001), this Court upheld a similar non-waiver provision. In that case, we held that the lessor, by routinely accepting late payments, did not as a result waive the right to rescind the lease based on the lessee's subsequent default. Id. We held that the lease expressly stated that failure of lessor to insist upon strict compliance would not cause waiver of its right to later insist upon strict compliance. Id. Our holding in Kirkland is applicable to the case at hand. USRP's right to collect percentage rent based on gross sales was a recurring right based upon reoccurring defaults on the part of CEF. Id. Therefore, there was no waiver.

2. Equitable Estoppel
¶ 22. "Equitable estoppel is a doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right he otherwise would have." In re Municipal Boundaries of City of Southaven, 864 So.2d 912, 917 (¶ 10) (Miss.2003). "Equitable estoppel requires that one party by its conduct, words, or even silence, make a representation or concealment of material facts." Brock v. Hankins Lumber Co., 786 So.2d 1064, 1067 (¶ 11) (Miss.Ct.App.2000). "That representation must be with actual or imputed knowledge of the facts and with the intent that the other party rely on the representation because of the party's ignorance of the truth." Id. The damage must proximately result, and it is the claimant's burden to prove these elements by a preponderance of the evidence. Id.
¶ 23. Applying the elements to the case at hand, it becomes clear that CEF has failed to prove what is required. First, neither USRP nor its predecessor had knowledge prior to the audit that CEF had been calculating its percentage rent on net sales. Second, CEF never claimed nor presented any evidence that it was ignorant of the fact that percentage rent was to be paid on gross sales. Finally, CEF was not damaged because it ultimately paid less than what the language of the lease ordered. Therefore, the doctrine of equitable estoppel is inapplicable.

3. Laches
¶ 24. In Merchants & Farmers Bank v. State ex rel. Moore, 651 So.2d 1060, 1063 (Miss.1995), our supreme court held that:
Before laches can be invoked to bar litigation, the following three independent criteria must be satisfied: (1) delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted.
¶ 25. The lease agreement was entered into in 1983. USRP became lessor under the lease in 1996. USRP discovered the shortage in percentage rent in 2002. As a result, there was a delay in asserting USRP's claim.
¶ 26. The next question then becomes whether USRP's delay was excusable. As noted above, the report that CEF sent to USRP was simple in form and only stated a single figure labeled "sales." The parties stipulated that the reports were done in this manner since the inception of the lease. The chancellor found that USRP was justified in accepting CEF's payments as it had because it was entitled to expect those payments to be the correct amount. The chancellor also found that USRP was entitled to expect that CEF had submitted the correct amount of percentage rent pursuant to the express language of the lease and in good faith. We agree. There was no evidence offered that USRP understood that the rent it was receiving was based on net sales.
*340 ¶ 27. Even if we assume that USRP's delay was inexcusable, CEF fails to prove any undue prejudice. By paying a percentage on a smaller sales number, CEF received a benefit. Therefore, the doctrine of laches does not bar USRP's claim.
¶ 28. For these reasons, we find that the chancellor's decision was supported by evidence and not manifestly wrong. The decision of the lower court is affirmed.
¶ 29. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., BRIDGES, P.J., LEE, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING AND BARNES, JJ., NOT PARTICIPATING.