**EDWARDS FAMILY PARTNERSHIP, LP, et. al., Plaintiffs**

**v.**

**BANCORPSOUTH BANK, Defendant**

**CIVIL ACTION NO. 3:14CV964–DPJ–FKB**

United States District Court, S.D. Mississippi, Northern Division.

Signed February 21, 2017

Jeff D. Rawlings, Rawlings & MacInnis, PA, Madison, MS, for Plaintiff.

James P. Caldwell, Kevin Bryan Smith, Riley, Caldwell, Cork & Alvis, PA, Tupelo, MS, Alan Walter Perry, John Alexander Purvis, Simon T. Bailey, Bradley Arant Boult Cummings, LLP, Jackson, MS, for Defendant.

## ORDER

Daniel P. Jordan III, UNITED STATES DISTRICT JUDGE

This contract dispute is before the Court on Defendant BancorpSouth Bank's Motions for Summary Judgment [77, 93, 100]. Because Plaintiffs acquiesced to a sustained deviation from their contractual rights—assuming those rights were otherwise valid—Plaintiffs abandoned the right to enforce the contract. Defendant's second summary-judgment motion [93] is therefore granted. The remaining motions [77, 100] are denied as moot.

### I. Facts and Procedural History

The factual history in this case is long and complex. In general terms, Baltimore physician Dr. Charles Edwards, acting through various companies he controlled including Plaintiffs here, loaned money to non-party Community Home Financial Services, Inc. ("CHFS"). CHFS, in turn, held deposit accounts with Defendant BancorpSouth, including the disputed account ending in –3644. With respect to this account, BancorpSouth entered a 2003 Blocked Account Agreement (BAA) that allegedly tasked the bank with restricting the way CHFS could transfer deposited funds. Plaintiffs say BancorpSouth breached that duty, resulting in the improper transfer of millions of dollars to their detriment.

BAAs are recognized under Article 9 of the UCC and allow a secured party to create and perfect a security interest in a debtor's deposit account.[1] Here, Bancorp-South entered the 2003 BAA with debtor CHFS and CHFS's previous lender Roy

---

1. Under Mississippi Code section 75–9–104, "[a] secured party has control of a deposit account if ... [t]he debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor."

Al Finance and Loan Company ("Roy Al"). Under that tripartite agreement, Bancorp-South had few obligations, but Plaintiffs allege that two provisions are particularly relevant. In paragraph six, BancorpSouth agreed,

> The Lender [Roy Al] shall have the full and exclusive interest and control of and the irrevocable right, power and authority to demand, collect, withdraw, receipt for or sue for all amounts due, to become due and payable under each Blocked Account and, in the Lender's sole discretion, to take any other action, including the transfer of any Blocked Account to the Lender's own name, which the Lender deems necessary or appropriate to preserve or protect the security interests of the Lender, for the benefit of the Lender, in any Blocked Account.

2003 BAA [77–7] ¶ 6. And under paragraph seven,

> The Bank [BancorpSouth] or the Borrower [CHFS], as applicable, further agree[d] that (subject to the provision of Section 6) at all times it will make distributions from each Blocked Account *only* to the Concentration Account, for the benefit of the Lender in accordance with Section 3 hereof or as specifically otherwise directed by the Lender in writing.

*Id.* ¶ 7 (emphasis added). The BAA identifies the Concentration Account as "Roy Al Finance & Loan Co. / Union Bank of California / ABA# 122000496 / # [redacted]3753 Los Angeles, CA 90025." *Id.* ¶ 3. And according to Plaintiffs, the BAA required BancorpSouth to ensure that any transfers CHFS made from –3644 were made in the prescribed manner to the identified Concentration Account. Though that point is disputed, the Court assumes under Rule 56 that Plaintiffs are correct.

In 2006, the BAA players changed. Rainbow Group, Ltd. ("Rainbow") financed the payoff of CHFS's debt to Roy Al and became CHFS's lender. At that time, Roy Al executed an agreement purporting to "assign" to Rainbow "its right, title and interest in" the BAA related to Bancorp-South bank account –3644. Assignment of Blocked Account [1–5]. BancorpSouth contests the validity of this assignment, but it is assumed valid for the purpose of this Order.

Once the BAA was assigned, CHFS's president emailed a BancorpSouth employee directing her to change the "Lender" from Roy Al to Rainbow and the "Concentration Account" to First Bank Puerto Rico, San Juan. BAA Email 2006 [77–16] at 1–2. The parties also disagree whether this was a valid change to the BAA, but again the Court assumes for now that it was.

When Rainbow became the lender, it brought Dr. Edwards and three other entities he manages into the picture. Specifically, Dr. Edwards controls: (1) Rainbow, (2) Beher Holdings, Ltd. ("BHL"), (3) Edwards Family Partnership, LP ("EFP"), and (4) Beher Holdings Trust ("BHT") (collectively "Edwards Entities"). Of those, EFP and BHT brought this action, saying that, because of the way certain interests were shared and transferred from Rainbow to the other Edwards Entities, EFP and BHT may enforce the 2003 BAA against BancorpSouth. This too is contested but assumed true for the purpose of this Order.

In 2007, CHFS began deviating from the BAA by making transfers out of –3644 to a number of different bank accounts other than the Concentration Account. *See* Ledger [93–15]; Edwards Dep. [93–2] at 415, 421, 436–38. Nevertheless, Dr. Edwards approved this conduct because the transfers were made to the Edwards Entities, Edwards Dep. [93–2] at 362, or to legitimate CHFS accounts, *id.* at 421, 428,

437, and because CHFS always "made it right," i.e., paid down the loan, *id.* at 428. There is no evidence that Dr. Edwards directed BancorpSouth in writing to allow these transfers.

Unfortunately, CHFS ceased making payments in 2010. Borg Dep. [77–2] at 31. Consequently, in 2011, Dr. Edwards asked CHFS to "reinstate" the BAA and "make arrangements for all CHFS loan funds to be deposited ... for the sole credit of BH[T] and EFP." 2011 Email [93–8]. Eventually, in 2012, "BHT and EFP made demand on CHFS to cure the defaults." Compl. [1] ¶ 13.

According to Plaintiffs, BancorpSouth breached the BAA by allowing CHFS to transfer money to unapproved accounts from the blocked account (–3644), *id.* ¶ 19; *see also* Pls.' Mem. [92] at 3–4, and failing to notify Plaintiffs that CHFS was doing so. Compl. [1] ¶ 20. Aggrieved by Bancorp-South's alleged inaction, BHT and EFP filed suit on December 15, 2014. Their Complaint enumerates the following claims: (1) breach of contract(s), (2) negligence in breaching its duties of good faith and ordinary care under the contract(s), (3) breach of the fiduciary duties imposed by the contract(s), and (4) fraudulent concealment of breach. *Id.* ¶¶ 23–35. Bancorp-South moved for summary judgment, the motions are now fully briefed, and the Court has personal and subject-matter jurisdiction.

## II. Standard

Summary judgment is warranted under Federal Rule of Civil Procedure Rule 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a show-ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. The non-movant must also "articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith ex rel. Estate of Smith v. United States,* 391 F.3d 621, 625 (5th Cir. 2004). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when ... both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Finally, it should be noted that the Court endeavored to consider the record as a whole. But to the extent it may have overlooked evidence Plaintiffs failed to identify, the Court is under no "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal–Western Packaging Corp.,* 602 F.3d 374, 379–80 (5th Cir. 2010). Pursuant to Rule 56(c)(1), "a party asserting that a fact ... is genuinely disputed must support the assertion by ...

citing to *particular parts* of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials." (emphasis added). And under Rule 56(c)(3), "[t]he court need consider only the cited materials, but it may consider other materials in the record."

## III. Analysis

BancorpSouth filed three summary-judgment motions. This Order focuses on the second motion and whether Plaintiffs abandoned their alleged rights under the 2003 BAA. But before examining that issue, the Court must reconcile the claims reflected in Plaintiffs' Complaint [1] with the claims they pursue in response to BancorpSouth's summary-judgment motions.

### A. The Complaint

It is impossible to square Plaintiffs' summary-judgment responses with their Complaint. In that initial pleading, Plaintiffs allege a completely different set of facts—that BancorpSouth wrongfully allowed transfers out of CHFS's –7901 account, thereby breaching BAAs executed in 2005 and 2008. *See* Compl. [1] ¶¶ 19–20. Thus, BancorpSouth first moved for summary judgment, arguing that the allegedly wrongful transfers were from account –3644 only and that the single BAA for that account was the 2003 BAA. Def.'s Mem. [78] at 7 (citing BancorpSouth Wrongful Transfers [77–20] and Borg's Dep. [77–2] at 54–59, 233–34, 238).

▮ Plaintiffs essentially concede this point but pivot to the 2003 BAA and account –3644. According to them, "[t]here was of course a BAA on –3644," and their "complaint alleges that transfers from –3644 were wrongful." Pls.' Mem. [92] at 3. Because Plaintiffs make no effort to salvage their pleaded claims regarding the

2005 and 2008 BAAs on account –7901, those claims are dismissed with prejudice. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[F]ailure to pursue [a] claim beyond [the] complaint constitute[s] abandonment").

But this raises another question. As BancorpSouth rightly points out, the Complaint fails to mention account –3644 or the 2003 BAA. *See* Def.'s Reply [97] at 1 n.2. The Fifth Circuit has often held, in both reported and unreported opinions, that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). Importantly here, this rule disallowing new legal claims has also been applied to new factual bases for previously pleaded legal theories. *See, e.g., De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed.Appx. 200, 204 (5th Cir. 2012); *Benavides v. EMC Mortg. Corp.*, No. 3-12-46, 2013 WL 416195, at *4 (S.D. Tex. Jan. 31, 2013) (Costa, J.) (refusing to consider new factual theory supporting previously pleaded legal cause of action). Based on this line of cases, summary judgment might be appropriate. But there is an equally well-developed body of Fifth Circuit law holding that courts should construe new theories in a summary-judgment response as a motion to amend. *See, e.g., Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008).

▮ In this case, the Court will construe the responses as a motion to amend because BancorpSouth appears to have been on notice of these assertions and replied as though the facts had been properly pleaded in the Complaint. *See* Reply [97]; Reply [106]; Reply [112]. Nevertheless, a court need not grant a futile motion to amend under Federal Rule of Civil Pro-

cedure 15(a). *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 872–73 (5th Cir. 2000). Here, Plaintiffs have received a full and fair opportunity to defend their claims related to the 2003 BAA, and for the reasons that follow, the Court would nevertheless grant summary judgment.

### B. Second Summary–Judgment Motion

Plaintiffs now premise liability on "13 wrongful transfers out of –3644 which occurred from 11/3/10 through 5/14/12" in violation of "the terms of the blocked account agreement[ ], specifically paragraphs 6 and 7." Pls.' Mem. [103] at 6–7. With respect to the claims potentially related to those transfers, BancorpSouth advances three dispositive legal theories in its second summary-judgment motion: abandonment/waiver, statute of limitations, and mitigation. Of those, the Court agrees that Plaintiffs abandoned/waived the contractual provisions they now seek to enforce, so this Order is limited to that defense. The other two defenses are denied as moot.[2]

■■■ BancorpSouth contends that Plaintiffs "allowed, and directed, transfers for years that were totally inconsistent with th[e] contention" that the BAA obligated BancorpSouth to prohibit CHFS from making transfers out of –3644 to non-concentration accounts. Def.'s Mem. [94] at 4. BancorpSouth therefore asserts abandonment/waiver as an affirmative defense. *See* Ans. [5] at 3. "To obtain summary judgment [on this basis], [Defendant] must establish beyond peradventure all of the essential elements of the ... defense to

warrant judgment in [its] favor." *Chaplin v. NationsCredit Corp.,* 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986)) (emphasis omitted).[3]

■■■ Under Mississippi law, "[r]ights acquired under a contract may be abandoned or relinquished by ... conduct clearly indicating such purpose." *Stellar Grp. v. Pilgram's Pride Corp.,* No. 306CV186-WHB-LRA, 2007 WL 955293, at *6 (S.D. Miss. Mar. 28, 2007) (quoting *Broome Constr. Co. v. Beaver Lake Recreational Ctr., Inc.,* 229 So.2d 545, 547 (Miss. 1969)). The Mississippi Supreme Court explains:

> [T]he actions and pattern of conduct of the parties determine if a waiver or modification occurred. To determine the point at which any waiver occurs, the Court should look to the actions of the relevant party after that party has sufficient information to be on notice of the alleged deviation from the contractual duty. If, after acquiring knowledge of the deviation from a known right articulated in the contract, a party fails to insist on its contractual rights, or acts inconsistently with such rights, then that party waives the right to require such performance.

*Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n,* 964 So.2d 1100, 1112 (Miss. 2007) (citations omitted).

Therefore, BancorpSouth must "establish beyond peradventure" that (1) Plain-

---

**2.** BancorpSouth asserts that its abandonment defense disposes of all remaining claims, and Plaintiffs do not suggest otherwise.

**3.** BancorpSouth argues that "[n]o fine distinction is required as to any difference between waiver and abandonment" under Mississippi law. Def.'s Mem. [94] at 5 n.4. Plaintiffs offer no contrary authority, and this contention appears correct. *See River-*

*boat Corp. of Miss. v. Harrison Cty. Bd. of Supervisors,* 198 So.3d 289, 293 (Miss. 2016) (defining "waiver" as "the voluntary relinquishment or *abandonment* of a legal right or advantage") (emphasis added) (quoting *Waiver,* Bryan A. Garner, Garner's Dictionary of Modern Legal Usage 923 (2d ed. 1995)).

tiffs had a known right, articulated in the BAA, whereby BancorpSouth would monitor and prohibit unapproved –3644 transfers to accounts other than the Concentration Account; (2) Plaintiffs had "sufficient information to be on notice" that Bancorp-South was deviating from its contractual obligation to monitor and prohibit certain –3644 transfers; and (3) Plaintiffs failed to insist on this right or acted inconsistently with it. *See id.* For purpose of this motion, the parties assume the first element is satisfied and focus on the remaining two.

■ As to the second element—notice— BancorpSouth offers competent and unrebutted record evidence that the Edwards Entities knew transfers were occurring outside the BAA structure for which BancorpSouth had not received written approval. Beginning in 2007, the Edwards Entities received payments out of –3644 to accounts other than the designated Concentration Account. *See* Edwards Dep. [93–2] at 415, 436–38; Ledger [93–15]. Moreover, CHFS was successfully transferring funds to other CHFS accounts with Dr. Edwards's knowledge. *See* Edwards Dep. [93–2] at 421; *see also id.* at 438 ("Q ... So ... it was a course of dealings [for CHFS's president to] make transfers to a lot of accounts other than the concentration account listed in the blocked account agreement? A. Yes."); *id.* at 169 (agreeing "that the parties had, years ago, abandoned the use of any designated concentration account in the Blocked Account Agreement" for –3644); *id.* at 424–25 ("Q ... Now you understood beginning in 2010 [that CHFS] was not honoring what you thought the agreement was with respect to this account 3644 ... ? A ... I certainly

recognize that in November 2010."); *id.* at 407 (describing a "course of dealing" allowing funds to be sent to CHFS–operations accounts, not the Concentration Account); *id.* at 421–22 (acknowledging that funds were transferred to other "CHFS bank accounts over a large number of years and [he] never complained"). There is no evidence that the Edwards Entities directed BancorpSouth to allow these transfers.

BancorpSouth's notice argument is likewise consistent with a series of emails Dr. Edwards sent to CHFS in 2011, in which he asked that the provisions of the BAA be "reinstated" and then acquiesced to CHFS's request to delay reinstatement for three months. *See* Email 9/4/11 [106–16]; Email 9/6/11 [106–17]; Email 9/24/11 [106–18]. Plaintiffs acknowledge that Dr. Edwards was addressing the relevant BAA in these emails, but claim that they represent a "cooperative effort[ ] to help CHFS get back on track" and that "[n]o party to the agreement expressed an opinion that the agreements were not in force." *See* Pls.' Mem. [103] at 6. This argument misses the import of the evidence; cooperative or not, the emails document both Dr. Edwards's knowledge that the 2003 BAA was not then in effect and his agreement to continue that arrangement for a period of time.

Ultimately, Plaintiffs never directly rebut BancorpSouth's evidence that Dr. Edwards, and therefore EFP and BHT, were on notice that BancorpSouth was allowing transfers from –3644 in alleged violation of the BAA.[4] But Plaintiffs do argue that notice of BancorpSouth's BAA deviation was "impossible" because BancorpSouth failed to provide Dr. Edwards copies of

4. The Court concludes Dr. Edwards's acts are imputed to Plaintiffs EFP and BHT. Plaintiffs state that Dr. Edwards controlled the Edwards Entities, *see* Pls.' Mem. [92] at 11 ("[A]ll entities are Edwards family businesses."), and both parties cite his testimony with respect to the acts of those entities, *see, e.g., id.* at 11. If there is a viable legal argument that Dr. Edwards's knowledge of BancorpSouth's conduct and his related actions may not be imputed to Plaintiffs, Plaintiffs fail to make it.

bank statements for –3644 when he asked for them in 2012. *See, e.g.,* Pls.' Mem. [103] at 6. Even assuming Dr. Edwards was entitled to CHFS's statements—which is not apparent—the request came *after* Dr. Edwards had knowledge that the "course of dealings" allowed transfers to non-concentration accounts. *See* Edwards Dep. [103] at 438. So the statements would merely have confirmed what Dr. Edwards already knew and had allowed. And by then, he had already abandoned the right to have BancorpSouth perform under the 2003 BAA. Because Plaintiffs fail to create a question of material fact regarding notice, BancorpSouth has established the second element of its defense.

The third and final element turns on whether Plaintiffs either (1) failed to insist that BancorpSouth honor their BAA obligation to prohibit certain –3644 transfers or (2) acted inconsistently with BancorpSouth's duty to do so. BancorpSouth establishes both. Despite knowledge that BancorpSouth was not honoring its alleged BAA obligations, Dr. Edwards did nothing to stop it. Instead, he allowed the existing course of dealings to continue and actually agreed to delay reinstatement of CHFS's BAA obligations. *See* Email 9/4/11 [106–16]; Email 9/6/11 [106–17]; Email 9/24/11 [106–18]. Moreover, he testified that he "expected the bank to allow" transfers to accounts other than the Concentration Account. Edwards Dep. [93–2] at 175. According to Dr. Edwards, he did not complain to BancorpSouth regarding the wrongful transfers because "each time [CHFS] made it right." *Id.* at 428. But, without more, the Court struggles to understand how this excuses Plaintiffs' failure to insist that BancorpSouth honor the BAA. There is no evidence that BancorpSouth knew that CHFS "made it right" or that this knowledge would have made a difference. The evidence shows, instead,

that Plaintiffs acted inconsistently with their alleged contractual rights.

After acknowledging that he did not insist that BancorpSouth honor its BAA obligation, Dr. Edwards attempts to distinguish the "made-right" transfers he allowed from the "illicit" transfers of which he complains. When asked to confirm that "money was transferred to other [non-concentration] CHFS bank accounts over a large number of years and [that he] never complained," Dr. Edwards responded, "Yes, CHFS accounts." *Id.* at 422. Thus, Dr. Edwards seems to distinguish between transfers to CHFS accounts for a proper purpose and those to other accounts for an improper purpose. *See also* Pls.' Mem. [103] at 5. But this distinction is immaterial under the BAA. According to Plaintiffs, the BAA obligated BancorpSouth and CHFS to make transfers to the Concentration Account only, which was designated via email as the First Bank Puerto Rico account, or as otherwise "directed by the lender in writing." 2003 BAA [77–7] ¶ 7. Once the Edwards Entities chose to deviate from this concrete standard, they could not reasonably hold BancorpSouth responsible for judging which transfers were allowable under the BAA. BancorpSouth has established the third and final element of its abandonment/waiver defense.

Before concluding, the Court acknowledges that Plaintiffs offer a number of other arguments throughout their response, some of which they expressly relate to the abandonment issue. But many of those assertions are either unsupported under Rule 56(c)(1)(A), insufficiently explained, or legally deficient for reasons BancorpSouth offers in reply. *See* Def.'s Reply [106]. The Court will not, therefore, address each assertion. Those arguments that have not been expressly addressed

were nevertheless examined and would not have changed the result.

The Court will, however, briefly address a few overarching issues. To begin, Plaintiffs attempt to avoid summary judgment by observing that they disagree with a number of BancorpSouth's factual assertions. *See* Pls.' Mem. [103] at 2–6. But "[t]he mere existence of a disputed factual issue ... does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Prof'l Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *quoted in Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 223 (5th Cir. 1991). In this case, the material facts upon which BancorpSouth relies relate to Dr. Edwards's admitted knowledge that BancorpSouth was allowing transfers in alleged breach of the BAA and his subsequent failure to correct them. The other factual arguments BancorpSouth offered to bolster its core case are not material. *See, e.g.*, Pls.' Mem. [103] at 3 (disagreeing with BancorpSouth's contention that *CHFS* did not believe there was a valid BAA when question is whether *Plaintiffs* abandoned BAA provisions).

Turning to the law, the section of Plaintiffs' memorandum addressing abandonment spends most of its powder revisiting BancorpSouth's statute-of-limitations argument. *See id.* at 11. That said, they do offer a few legal arguments related to abandonment, none of which are persuasive. First, Plaintiffs block quote a "no-waiver" provision from CHFS's loan agreement. *See id.* at 10. But they fail to explain how BancorpSouth is bound by the provisions of a contract to which it was not a party. Nor do they cite a similar provision from the 2003 BAA, and it does not appear that any such provisions exist. This argument is of no moment.

Plaintiffs also attempt to place the onus on BancorpSouth to object if the "course of dealing" was inconsistent with the BAA. *See, e.g., id.* at 4 ("The Bank never objected to either the Lender, whether Roy Al or Edwards, or CHFS as to the course of dealing for the blocked accounts."). But under the BAA, it was allegedly the lender's right to have BancorpSouth prohibit wrongful transfers. If the Edwards Entities wanted to continue enjoying that right, they were required, under Mississippi law, to insist on it in the face of a known breach. *See Upchurch Plumbing, Inc.*, 964 So.2d at 1112 (holding that "the Court should look to the actions of the relevant party" and determine whether that "party fails to insist on its contractual rights, or acts inconsistently with such rights"). Plaintiffs failed to do so here.

So based on unrebutted evidence, Plaintiffs knew BancorpSouth was deviating from the 2003 BAA yet did nothing to correct or even contest the breach. And having abandoned or waived their rights to force BancorpSouth to perform under that contract, their claims related to it—as contemplated in their summary-judgment responses—are subject to dismissal. *See Zeitoun v. Seal*, No. 2:13-CV-107-HSO-RHW, 2014 WL 2931796, at *12 (S.D. Miss. June 30, 2014) ("Because Plaintiffs' breach of contract claim should be dismissed, Plaintiffs' other contract-based claims should also be dismissed, namely Plaintiffs' claims for breach of the duty of good faith and fair dealing, tortious interference with contract, and reformation."). The claims actually pleaded in the Complaint regarding

other BAAs and accounts are likewise dismissed.

## IV. Conclusion

For these reasons, Defendant's Second Motion for Summary Judgment [93] is granted. Defendant's two additional motions [77, 100] are denied as moot. This action is dismissed with prejudice. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 21st day of February, 2017.